## Richmond

### RICKS AND OTHERS V. SCOTT AND OTHERS.

March 11, 1915.

Absent, Keith, P., and Kelly, J.*

1. EASEMENTS—*Grant by Implication—Way of Necessity—Case in Judgment.*—Easements are sometimes implied upon a grant of land, because without them the property could not be used by the grantee, or could not be used for the purpose for which it was granted. Sometimes a right of way arises from necessity; the intention of the grantor being inferred from the uselessness of the land to the grantee without the right of way. In the latter case, the inference will not be drawn if there be already another mode of access to the land, though much less convenient or more expensive to develop. Upon the evidence in the case in judgment, the claimants are not entitled to a right of way either by implication or of necessity as they and those under whom they claim have had for a time "when the mind of man runneth not to the contrary" and still have a mode of access to their land which is all the outlet that was or is needed for the convenient use and enjoyment thereof.

2. EASEMENTS — *Silence of Grant — Notice — Rights of Grantee.*— Where no private right of way or easement is reserved in the deed itself, and the purchaser has no notice of any claim by third persons of a right of way over the land, he takes the land free from any claim therefor either from the grantor or those claiming under him.

Appeal from a decree of the Circuit Court of Southampton county. Decree for the complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

---

*Argued before Judge Kelly's term began.

*J. Hoge Ricks* and *Cutchins & Cutchins,* for the appellants.

*R. E. L. Watkins* and *Peatross & Savage,* for the appellees.

Cardwell, J., delivered the opinion of the court.

This appeal is from two decrees entered in a suit in equity instituted by appellee, Joseph E. Scott, to enjoin appellants from obstructing appellee, Scott, or those claiming under him, in the use and enjoyment of a certain passage way or road leading, as is alleged, from a certain farm owned by said appellee, known as the Munford farm, through an adjoining farm, now owned by one of the appellants and known as the Pretlow farm, to a public road.

It appears that prior to January 1, 1904, Mrs. Deborah R. Pretlow, widow of John Pretlow, deceased, was the owner of two tracts of land, lying side by side, and known, respectively, as the "Pretlow farm" and the "Munford farm," each containing several hundred acres of land. Upon each farm there was a dwelling house and other buildings usually found upon such farms. For years prior to his death the residence and place of abode of John Pretlow and that of his widow after his death was upon the Pretlow farm, the northern boundary of which was the "Franklin Public Road," the mansion house on the Pretlow farm being near this road, while the Munford farm lay to the south or the southwest of the Pretlow farm, and Mrs. Pretlow, as did her husband, managed, used and operated the two farms as a single plantation, cultivating portions thereof with hired hands and renting other portions to tenants, some of whom resided on the plantation,

while others lived elsewhere and came thither to tend their crops.

At the time mentioned and long prior, there was a road called in this record the "Demus Williams road," leading out eastwardly from the southeastern side of the Munford farm through the land of one Nicodemus Williams and down the dividing line between the lands of E. J. Joyner and Thomas White to the Franklin public road. Continuing westwardly across the Munford farm and through the lands of one W. J. Barham, the "Demus Williams road" extended to Barham's Mill and the public road to Courtland, called the "Courtland road." This "Demus Williams road" had been in existence and use, according to the evidence, since a time when "the memory of man runneth not to the contrary," one of the witnesses sixty-four years of age saying that it had been there and in use "ever since he knew anything," and "Looks like long before." This road appears to have been used for many years in common by the tenants, occupants and owners of the Munford farm and by other persons who wished to go to Barham's mill, or to the "Courtland road." Some years ago, however, a new road was cut through from the Franklin road to the Courtland road, and the Barham's mill road ceased to be used as theretofore; but, thereafter, and in recent years, the tenants, occupants and owners of the Munford farm, who it seems found it necessary to do so, have made a general and continuous use of said "Demus Williams road." There was during the time mentioned a "cart path," or plantation road, running southwardly from the barn-yard of the Pretlow farm into and across the Munford farm, and connecting with the road to Barham's mill. In traveling over this cart path northwardly from the Munford farm, by passing through said barnyard and close by the Pretlow dwelling house and out through the front lawn gate, the Franklin road was reached, at a point about

one or one and a quarter miles farther from the town of
Franklin than the point where the "Demus Williams road"
intersects the Franklin road.  This "cart path" it is con-
ceded, is "just an ordinary cart path through the farms"
and was used primarily as a plantation road, but, as was
usual in such cases, Mr. Pretlow in his lifetime and Mrs.
Pretlow after she became the owner of the two farms,
solely as a matter of courtesy, or in a neighborly spirit,
permitted their neighbors to use it, but, as also clearly ap-
pears from the evidence in this cause, whenever this privi-
lege was abused the farm gates across this road were
locked and for a time passing thereover through the Pret-
low farm to the public road was prohibited.

By deed dated January 1, 1904, and duly recorded, De-
borah R. Pretlow, widow of John Pretlow, deceased, con-
veyed to appellee, Joseph E. Scott, the complainant in this
cause, the Munford farm, describing the same by metes
and bounds, but making no mention of conveyance of the
right of way now claimed by Scott, from the Munford
farm along said cart path out to the Franklin road.  By
deed of even date with that just mentioned, said Scott con-
veyed the Munford farm to Ricks and Watkins, trustees,
in trust to secure the payment of eight certain notes, evi-
dencing a part of the purchase price for said property,
which notes, as stated in the bill in this cause, had all been
paid except the two last maturing, aggregating in prin-
cipal the sum of $587.50.

On February 5, 1907, Scott conveyed the Munford farm,
subject to the lien of the above mentioned deed of trust,
and other property to P. R. Camp, trustee, in trust to
secure to P. D. Camp the payment of the sum of $2,960.40,
which deed expressly states that the conveyance of the
Munford farm is made, "subject to a prior deed of trust
in favor of Deborah R. Pretlow," and provides that in the
event of the sale of the Munford farm by said trustee, "out

of the proceeds of sale the said trustee shall pay, (1) expenses of the trust; (2) the amount then remaining unpaid on the debt secured by the prior deed of trust in favor of Deborah R. Pretlow; (3) the balance then remaining unpaid . . . on the bonds secured to P. D. Camp by this deed; and (4) the remaining of the purchase price, if any, he shall pay to the said J. E. Scott."

Upon the death of Mrs. Pretlow some time in the year 1907, the Pretlow farm, as well as all of the residue of her estate, after the payment of several specific bequests, became the property of her heirs at law, who are the defendants to this suit and appellants here. In December, 1907, the devisees of Mrs. Pretlow offered the Pretlow farm for sale at public auction, at which sale Elizabeth R. White became the purchaser, and still owns and occupies the farm.

It further appears that from January, 1904, until January, 1911, said Joseph E. Scott, the purchaser of the Munford farm from Mrs. Pretlow, had been in possession of and cultivating it, while living just opposite the point where the "Demus Williams road" enters the Franklin road, and that in going to and from the Munford farm he used this "Demus Williams road" almost exclusively, as testified to by two witnesses who lived by the side of this road and near to said Scott's place of residence. During this period of time, Scott laid no claim to any supposed right of way over the Pretlow farm, nor did he often use the cart path across it, concerning which he states when testifying in this case, "I did seldom use it myself." In fact, instead of claiming and using a right of way over and along said cart path, he (Scott) on several distinct occasions built fences across it at the point where it crossed the dividing line between the Munford and Pretlow farms, thus preventing any passing that way through the two farms. It further appears that P. D. Camp "agent" for Scott, in January, 1911, was endeavoring to negotiate a sale of the Munford

farm and one M. C. Blythe, who lived at a point known as Williams Cross Roads, across the Pretlow farm from the Munford place, and for whom the "Demus Williams road" was very much out of the way and inconvenient, agreed to purchase the Munford farm, "provided a right of way could be secured for him across the Pretlow farm."

P. D. Camp, testifying in this case says: "Mr. Joe Scott authorized me to sell the farm if I could find a purchaser for it, and Mr. Blythe had made an offer for the farm if we could get a right of way through the Pretlow farm . . .;" and again, "I had an offer for the Munford farm of $4,-450.00 provided the party that made this offer could get through the Pretlow farm, and under no other conditions would he buy the farm except to give him that right of way through the Pretlow farm . . . ;" and again says the witness: "As stated just now, Mr. Blythe said he would give $4,450.00 for the farm upon the condition that he should have a right of way out to the road through the Pretlow farm and under no other conditions."

On the 9th or 10th of January, 1911, when W. A. Ricks, representing the devisees of Mrs. Pretlow, went to P. D. Camp "to see if he would take up one of the notes drawn by Mr. Scott, as he had been doing before," Camp insisted that a right of way across the Pretlow farm be secured for him, or rather for Mr. Blythe, and stated that the note which was then due would not be paid unless such a right of way was secured." Upon being told by Mr. Ricks that he had no right to give a right of way through the Pretlow farm, as the farm had been sold to his sister, Mrs. White, who then owned it, Camp refused to pay the note.

While recognizing no right on the part of Scott or Camp to an easement of a right of way across the Pretlow farm, but anxious to settle if possible without a law suit the controversy then for the first time made concerning such an easement, appellants, other than Mrs. White, did what they

could to assist Scott in his efforts to secure the desired right of way from Mrs. White across her property, but failing in these efforts, and although believing that the owner, tenants and occupants of the Munford farm had an undisputed right of way over the "Demus Williams road" to the Franklin public road, and although this right had never been questioned until then by Scott and Camp, in order that all questions concerning this right of way might be settled once and for all time, W. A. Ricks, on July 8, 1911, procured and had duly recorded a deed executed by Thomas P. White, E. J. Joyner and Nicodemus Williams and their wives, in which the grantors did "give, grant and confirm unto W. A. Ricks and all other persons, a free and unobstructed right of way of the same width as the one now in use, over and along the old roadway now leading from the county road to the tract of land known as the 'Munford farm,' which was purchased by Joseph E. Scott from Deborah R. Pretlow on the 1st day of January, 1904. Said roadway is located in Franklin magisterial district of Southampton county, Virginia, and runs across the lands of Nicodemus Williams and between the farms of Thomas P. White and E. J. Joyner to the county road leading from Franklin to 'Uggal' or Williams Cross Roads."

The grantors in this conveyance, as plainly appears, were the only persons who could have raised a valid objection to the free and unobstructed use of the "Demus Williams road" by the owners, tenants or occupants of the Munford farm, and which had been so used, as already stated, for very many years prior to this conveyance, and the use whereof had never been before called in question.

In August, 1911, default having been made in the payment of the debt due P. D. Camp and secured by the second deed of trust above mentioned, P. R. Camp, the trustee

therein named, sold the Munford farm at public auction,
P. D. Camp becoming the purchaser thereof at the price
of $4,000 and the farm was conveyed to him by the trustee.
The purchase money from this sale, viz., $4,000, appears
to have been sufficient to pay the costs of executing the
trust, the balance due on the debt secured by the prior deed
of trust in favor of Mrs. Pretlow ($587.00), with interest,
and also the debt secured by the second deed to P. D. Camp,
but it does not appear that P. R. Camp, trustee, has ever
settled any account as such, nor did he pay the balance of
the debt secured to Mrs. Pretlow. Default having been
made in the payment of said balance due on the debt secured
to Mrs. Pretlow, John D. Abbitt was substituted as trus-
tee in said deed securing the same, in the place and stead
of Ricks and Watkins, the trustees therein named, who de-
clined to execute the trust, and being required so to do by
the holder of the notes evidencing the balance due on said
debt Abbitt, trustee, advertised the Munford farm for sale
at public auction; whereupon, said Joseph E. Scott insti-
tuted this suit alleging in his bill that at the time of the
conveyance of the Munford farm to him there was a cart
path across the Pretlow farm, which was reasonably neces-
sary for the proper enjoyment of said Munford farm, and
passed with said farm as an appurtenance thereof; that
the exercise of said right of way by the "tenants, owners
and occupants" of said Munford farm has been obstructed
by Elizabeth R. White (the present owner of the Pretlow
farm) and their right thereto denied; that a sale of said
Munford farm while this question concerning its appurte-
nances is undecided, would result in the farm's being sold
at a sacrifice, etc.; the prayer of the bill being that Abbitt,
trustee, as aforesaid, be enjoined from selling the Munford
farm until the question of the right of the tenants, owners
and occupants to the alleged easement appurtenant thereto
could be determined; that said cart path and right of way

48

across the Pretlow farm may be decreed to have passed to complainant by the deed from said Deborah R. Pretlow, as an incident and appurtenant of the property thereby conveyed, etc.

A preliminary injunction was awarded in accordance with the prayer of the bill, and the defendants (appellants here) in due course demurred to the bill and answered the same both by an original and an amended answer, asking, for reasons stated, that their answer be treated as a cross-bill, and denying that the cart path in question was appurtenant to the Munford farm, denying that it was the intention of Deborah R. Pretlow to grant to complainant, Scott, any right in this cart path through the Pretlow farm, or that its passage through the last-named farm was at all necessary for the proper enjoyment of the Munford farm; and alleging that at the time of said conveyance to the said Scott there was, and still is, a well defined road and right of way ("Demus Williams road") from the southeastern side of the Munford farm to the public road, which road is all the outlet that was or is needed for the convenient use of the Munford farm, etc.

P. D. Camp appeared by counsel at the October, 1912, term of the trial court and was permitted, over the objection of the defendants, to file his petition and become a plaintiff in the cause, and praying the relief asked in the bill filed by Scott. On the same day that the petition of Camp was filed and he was admitted as a party plaintiff, the cause was argued by counsel before the Honorable Jesse F. West, who was sitting for the Honorable J. L. McLemore, judge of the circuit court of Southampton county, and thereupon the judge presiding, of his own motion, entered a decree stating that the court was of opinion that complainants were entitled to a right of way across the Pretlow farm and appointed commissioners to locate such a right of way, but the parties to this controversy, being

unwilling to abide by that ruling of the court, the final decree in the cause was entered, by which the court adjudged and decreed, as a matter of fact, "That the road or path mentioned or described in the bill of complaint across the farm known as the Pretlow farm, from the farm known as the Munford farm, to the public road, was used by the owner of the two said farms, when the two said farms were owned by the same owner as one heritage, for the use and convenience of the tenants, owners and occupants of the farm known as the Munford farm, and that the said road or right of way was and is clearly marked, open, obvious, notorious and visible, and had been established and used for a long number of years, to-wit, more than thirty years prior to the sale of the Munford farm to the complainant herein, Jos. E. Scott, and that the said road or right of way was and is reasonably necessary for the convenient use and enjoyment of the Munford farm; that at the time of the sale of the Munford farm to the complainant, Jos. E. Scott, the said Munford farm was entirely surrounded by the land of the grantor in the deed to the said Jos. E. Scott or by the land of third parties, and that there was no way of getting from the said Munford farm to the public road except across the land of the grantor of the said Jos. E. Scott, who was the predecessor in title of the defendants herein, or across the land of strangers."

The rulings of the court in not sustaining appellants' demurrer to the bill and in admitting P. D. Camp as a party plaintiff in the cause, are assigned as error in the petition for this appeal, but that relating to the ruling on the demurrer was waived in the oral argument here, and in our view of the case it need only be considered upon its merits.

The case upon its facts is wholly dissimilar to that line of cases to which belong *Sanderlin* v. *Baxter*, 76 Va. 299, 44 Am. Rep. 165; *Scott* v. *Moore*, 96 Va. 668, 37 S. E. 342, 81 Am. St. Rep. 749; *Oney* v. *W. B. Vista L. Co.*, 104 Va.

580, 52 S. E. 343, 2 L. R. A. (N. S.) 832, 113 Am. St. Rep. 1066, and *Muse* v. *Gish*, 114 Va. 90, 75 S E. 764, so much relied on by counsel for appellees.

In 1 Minor on Real Prop., section 103, the rules of law peculiarly applicable to the facts of this case are clearly set out and the authorities to sustain the text cited. The learned author says: "Easements are sometimes *implied upon a grant of land,* because without them the property granted *could not be used by the grantee,* or could not be used *for the purpose* for which it was granted. Such easements are said to arise *by necessity,* that is, by a *necessary inference,* since otherwise the whole grant would be nugatory * * *

"In the case of ways by necessity, it is the *intention of the parties* that is sought to be inferred from the *uselessness* of the land to the grantee (unless such right of way is implied). Whether *degrees of usefulness* may be admitted as a ground in determining this intention is a question upon which the courts are divided. Upon principle, it would seem that, if there already be another mode of access to the land, though *much less convenient, or more expensive* to develop, the reason for the inference of a grant of a way by necessity ceases."

Appellants in this case say in their answers prayed to be treated as a cross-bill (to which appellees have filed no answer or replication and introduce evidence to support the statement) that the cart path in question was not at all necessary for the "proper enjoyment" of the Munford farm; that there was at the time of the conveyance of that farm to appellee, Scott, and still is, a well defined road and legal right of way out from the southeastern side of the farm, which said road is all the outlet that was or is needed for the convenient use and enjoyment of said Munford farm; that the said road is a much nearer route to the town of Franklin (the local market and center of trade)

than the cart path for which appellees are now contend-
ing, and it has been used by the tenants, occupants and
owners of the Munford farm for a great many years, to-
wit, for over seventy years; and that appellee, Scott, had
used exclusively since purchasing the Munford farm this
right of way or road extending eastwardly from said farm
through lands' of Nicodemus Williams and between the
farms of E. J. Joyner and Thos. B. White to the Franklin
road, and has never until recently made any attempt to use
the said cart path through the Pretlow farm, but on the
contrary, soon after purchasing the Munford farm in 1904,
he, Scott, obstructed and barricaded said cart path at the
point where it crossed the line between the two farms and
these obstructions were from time to time renewed. These
facts are not denied by Scott, nor is any evidence intro-
duced to contradict them. On the other hand the testi-
mony for appellees, as well as that for appellants, fully
sustains the contention of the latter, that this road, the
"Demus Williams road," has been used by the owners, ten-
ants and occupants of the Munford farm since a time
when the "mind of man runneth not to the contrary."

It is true that the evidence shows that this "Demus Wil-
liams road" has been neglected so that to put it in good
order for general use would be somewhat expensive, but
the owners of the lands over or along which it runs have
testified in this case, and neither denied the right of own-
ers, tenants and occupants of the Munford farm to use
said road, and both expressly stated that it had been used
by persons going to or from the Munford farm for more
than thirty years. Appellee, Scott, as we have seen, ad-
mits that during the seven years he owned the Munford
farm he seldom used the cart path in question and used
the "Demus Williams road" constantly and almost ex-
clusively in going to and from the Munford farm. The
deed of Mrs. Pretlow to him, as we have also seen, is sil-

ent, as also are the deeds of trust executed by him to trustees to secure purchase money for the farm and borrowed money, as to this cart path or any other passage way through the Pretlow farm to the public road. He was present when the Pretlow farm was sold at public auction in 1907 for partition, and when the same was purchased by appellant, Mrs. White, without any notice whatever of a claim of an easement over the farm for the benefit of the Munford farm, and yet he remained silent as to any claim he was making or intended to make to such an easement. To go still further into the evidence, it is proven by numerous witnesses, those for appellees as well as those for appellants, and admitted, though reluctantly, by appellee, Scott, himself, that soon after he purchased the Munford farm he built a rail fence across the old cart path or plantation road at the point where it crosses the line between the two farms; that afterwards one of the tenants on the Munford farm and one of those on the Pretlow farm, without his knowledge or consent, built a gate in the rail fence at that point, for their own personal convenience; that later, after this gate had been broken down, he (Scott) again built across this road or cart path at the point mentioned another fence—"this time a wire fence, something that could not so readily be taken down." Scott, while testifying, speaks lightly of this fence, referring to it as a frail affair, that only remained for a few months, but C. W. Darden testifies that when he wished to pass through that way during the Christmas season, 1909, he had to go lower down the line to a place where a portion of the old rail fence still stood and take down that rail fence in order to pass from the Munford farm to the Pretlow farm.

The negotiations of Scott leading up to his purchase of the Pretlow farm were conducted on behalf of Mrs. Pretlow by her brother, W. A. Ricks, who, when testifying in this case, was asked: "Q. Was there ever an intention on

your part to grant Mr. Scott a right of way through the Pretlow farm? A. No, sir, not by word or gesture." Scott, when testifying for himself, was asked: "Q. Mr. Scott, have you ever talked with Mr. Ricks since the time you bought this farm, I mean the Munford farm, about a right of way from the Munford farm to the public road? A. No, I never have."

P. D. Camp, having testified as to some agreement between him and Scott, to the effect that the latter still had some interest in the Munford farm, was asked as to how this controversy as to this alleged right of way first arose, and he answered: "Mr. Joe Scott had authorized me to sell the farm, if I could find a purchaser for it, and Mr. Blythe had made an offer for the farm if we could get a right of way through the Pretlow farm, that is, leading from the Munford farm through the Pretlow farm along the line of the old right of way up to the public road, that is, coming up from the Munford farm through the Pretlow farm to the back side of the barn-yard, and through the barn-yard to the right of the dwelling house on the Pretlow farm, and out the avenue in front of the house to the road, and I asked Mr. Ricks if he could do that; he said it was not in his power to do that, as he had sold the farm to his sister, Mrs. White, and therefore the right was in her." Again the witness said: "As I stated just now, Mr. Blythe said he would give $4,450.00 for the farm upon the condition that he should have a right of way out to the road through the Pretlow farm, and under no other condition."

It thus appears that appellees did not nor did either of them ever entertain an idea that they had of right such an easement or right of way out from the Munford farm over and through the Pretlow farm to the public road as they are asserting in this suit, or asserted such right until they found a purchaser for the Munford farm willing to give

a higher price for it with such a right of way out to the
public road than he would give without it, or buy at all. It
is inconceivable, upon the facts in the case, that Mrs. Pret-
low or her husband, in the use they made or permitted of
this cart way or plantation road, ever intended to estab-
lish it as an outlet to the public road that would pass to
a grantee of the Munford farm as a necessary easement
or appurtenance thereto.

As we have seen, the easement asserted by appellees was
neither apparent, continuous nor reasonably necessary to
the enjoyment of the Munford farm at the time it was con-
veyed to appellee, Scott, by Mrs. Pretlow in January, 1904,
or during the seven years that he owned and cultivated it,
and during which time the Pretlow farm passed into the
hands and ownership of appellant, Mrs. White, a *bona fide*
purchaser thereof for value, and who was without knowl-
edge of the easement over the property which appellees
never asserted prior to this suit. The user of the cart
path through the Pretlow farm, up to the conveyance of
the Munford farm to appellee, Scott, was chiefly, if not
solely, as a plantation road, and the subsequent actions of.
Scott himself all tend to negative any intention on the part
of Mrs. Pretlow, or expectation on his part, that a right of
way across the Pretlow farm should pass as an appurten-
ance of the Munford farm.

"Where no private right of way or other easement is re-
served in the deed itself, and the purchaser has no notice
of any claim by third persons of a right of way over the
land, he takes the land free from any claim therefor, either
from the grantor or those claiming under him." *Deacon*
v. *Doyle,* 75 Va. 258, 1 Minor on Real Prop., p. 117.

In the case here, not only is it proved that appellee, Scott,
was present when the Pretlow farm was sold at public auc-
tion and purchased by appellant, Mrs. White, but that
there was no notice to any prospective purchaser of the

claim he is now making, or any one else, to the use and enjoyment of an easement over the farm; the sale being made without any reservation whatsoever, and no mention made of such an easement, either in the advertisement at the time of the sale or in the deed conveying the property.

To put upon the Pretlow farm the onerous burden of such an easement or passage way as appellees are contending for is not, as we view the case, warranted by the facts proven.

For the foregoing reason, the decrees appealed from are reversed and annulled, and this court will enter the decree which the circuit court should have entered, dissolving the injunction awarded in the cause and dismissing the bill filed therein by appellee, Scott, with costs to appellants.

*Reversed.*