400 S.E.2d 529 (1991)
Richard L. RUSSAKOFF, et al.
v.
Kerry I. SCRUGGS, et al.
Record No. 900572.
Supreme Court of Virginia.
January 11, 1991.
*530 William S. Smithers, Jr. (James C. Bodie; Thompson, Smithers, Newman & Wade, Richmond, on brief), for appellants.
Barry W. Norwood, Richmond, for appellees.
Present: All the Justices.
LACY, Justice.
The issue we must decide on this appeal is whether lot owners established an easement for access to and use of a lake.
*531 In the 1960s, Richmond Real Estate Developers, Inc., which was owned by E. Carlton Wilton and his two brothers as sole stockholders, began constructing Canterbury East subdivision, located in the Tuckahoe District of Henrico County. The subdivision included a man-made lake with a waterline at the contour line of about the 136' elevation, as shown on the Canterbury East subdivision plat filed with the county. Richard L. and Diane Y. Russakoff, Edward E. Haddock, and Edwin M. Lohmann (collectively Russakoff), each own a lot in Canterbury East subdivision. Their rear lot lines abut the 140' contour, thus leaving a strip of land approximately 20 feet wide, between the lots and the lake. This strip was reserved for flood plains, sewer lines, and water lines.
Richmond Real Estate Developers ceased paying taxes on the lake property, and it escheated to the Commonwealth. A tax sale was held on September 16, 1983, where Kerry I. and Doris J. Scruggs (collectively Scruggs) were the highest bidders. On May 25, 1984 the Commonwealth conveyed the lake property to Scruggs pursuant to the tax sale. Scruggs then posted "no trespassing" signs, erected a fence around the lake, and sent all homeowners surrounding the lake a letter offering them use of the lake by renting or purchasing shares. Further, Scruggs testified that, since the lake was in "bad need of repair and hadn't had anything done to it for years," as of the date of trial he had spent $8,231.53 on improvements, which included approximately $3,000 in taxes and insurance.
By bill of complaint filed February 10, 1988, Russakoff alleged that the right to use the lake had been acquired under a number of legal theories, including adverse possession. The trial court sustained Scruggs' demurrer on the adverse possession claim, but overruled the demurrer as to the other theories. In an amended bill of complaint, Russakoff alleged a right to use the lake by virtue of prescriptive easement, oral agreement, license, easement by implication, and easement by necessity. After an ore tenus hearing, the trial court ruled that Russakoff was not entitled to any easement or other rights to use Canterbury Lake. The court dismissed the action, and Russakoff appeals.
In the amended bill of complaint, Russakoff advanced various theories in support of the right of access to and use of Canterbury Lake. The trial judge did not relate his factual findings to any theory Russakoff identified, but characterized the claims as ones based on easements, and stated in an opinion letter and final order that Russakoff was "not entitled to any easement rights" in Canterbury Lake or "to the use of" the lake. Therefore, we must review the record to determine whether Russakoff failed to establish an easement under any of the three easement theories he pled, which were an easement created by prescription, by implication, or by necessity.[*]
We begin by reviewing the applicable legal principles. Easements are not ownership interests in the servient tract but "the privilege to use the land of another in a particular manner and for a particular purpose." Brown v. Haley, 233 Va. 210, 216, 355 S.E.2d 563, 567-68 (1987). Easements are appurtenant to, and run with, the dominant tract if they benefit the owner in his use and enjoyment of that tract. See Scott v. Moore, 98 Va. 668, 675, 37 S.E. 342, 344 (1900).
There are a number of ways an easement can be created. "Easements may be created by express grant or reservation, by implication, by estoppel or by prescription." Bunn v. Offutt, 216 Va. 681, 684, 222 S.E.2d 522, 525 (1976). In the case of easements over streets and roads, we have recognized the creation of an easement by reference in the deed to a plat showing the road, even if the street or road had not been created or was not being used at the time of conveyance. Walters v. *532 Smith, 186 Va. 159, 169-70, 41 S.E.2d 617, 622 (1947). Within the category of easements created by implication, we have recognized easements created by necessity, see, e.g., Middleton v. Johnston, 221 Va. 797, 802, 273 S.E.2d 800, 803 (1981), and by pre-existing use (also referred to as quasi-easements), see, e.g., Brown, 233 Va. at 218, 355 S.E.2d at 569. See also 1 R. Minor, The Law of Real Property § 99 (F. Ribble 2d ed. 1928).
Russakoff claims, inter alia, an easement arising by implication. Such an easement is based on the legal principle that when one conveys land, he is presumed to transfer all that is necessary to the use and enjoyment of the land conveyed. Brown, 233 Va. at 218, 355 S.E.2d at 569. While one cannot have an easement on land he owns, if, before severance, one part of the land was used for the benefit of another part, a "quasi-easement" exists over the "quasi-servient" portion of the land. That easement is conveyed by implication when the dominant tract is severed; the grantee of the dominant tract obtains an easement over the servient tract, based on the previous use. See generally Sanderlin v. Baxter, 76 Va. 299 (1882); R. Minor, supra, § 99.
While the extent of the easement right is determined by the circumstances surrounding the conveyance which divides the single ownership, the existence of the easement is established on a showing that (1) the dominant and servient tracts originated from a common grantor, (2) the use was in existence at the time of the severance, and that (3) the use is apparent, continuous, and reasonably necessary for the enjoyment of the dominant tract. Brown, 233 Va. at 219, 355 S.E.2d at 569; Fones v. Fagan, 214 Va. 87, 90-91, 196 S.E.2d 916, 919 (1973).
It is clear from the record before us that Russakoff's lots (dominant tracts), and the lake property (servient tract), were originally part of a single tract, thereby satisfying the first prong of the test. Next, the record is equally clear that, at the time Russakoff's predecessors in title took possession of the dominant tracts, the servient tract was a lake. Wilton testified as to the lake's existence, and the lake was reflected on the plat in the deeds conveying the dominant tracts to Russakoff's predecessors. The use of the servient tract as a lake, pre-existing the severance, was established.
Turning to the question of apparent and continuous use, the trial court identified Russakoff's use of a pump for lawn watering as the only use of the lake. This use, the trial court held, was not sufficient to establish an easement. Russakoff asserts that this holding is erroneous and that the record supports a finding that the use of the lake and strip of land to gain access to the lake was sufficient to establish an easement. We agree.
The record reflects that Russakoff and previous owners of the lots used the lake openly and continuously, through the construction of docks, piers, and sprinkler systems, and by using the lake for boating and ice skating. Mr. Lohmann, who purchased his lot in 1977, testified that he had a boat which his children used for fishing, frogging and "that type of thing," and when the lake was frozen in the winter they skated on the ice. Haddock testified that the lake was a "big consideration" in his purchase of his property in 1968. He "bought a boat along with the house so we could use it in the lake." The boat originally belonged to Mr. Sharp, Haddock's predecessor in title. Haddock testified that he used the lake for wading, built a pier (although it had disintegrated prior to Scruggs' purchase of the lake), and bought a canoe and used it on the lake. He also testified that his family as well as neighbors skated on the lake in the winter.
Dr. Stearns, Russakoff's predecessor in title, testified that he had used the lake since 1966. He constructed a pier, a lawn irrigation system, and a retaining wall. Additionally, he observed as many as 800 people ice skating on the lake in the winter. He had used the lake for almost 20 years before Scruggs demanded that he pay $250 a year for access to and use of the lake.
*533 Diane Russakoff testified that, in viewing the property prior to purchasing it from Stearns, she saw boats in Stearns' yard, as well as in the neighbors' yards. Mrs. Russakoff also observed that the grass was cut all the way to the water. Dr. Stearns informed her that he had made uninterrupted use of the lake since he had purchased the property. Additionally, Dr. Stearns showed the Russakoffs the sprinkler system from the lake to the lawn. Although the system was disconnected at the time of the purchase from Stearns, the Russakoffs re-connected the system and used it.
Our review of this record shows that the trial judge's finding that the only use of the lake was Russakoff's lawn sprinkler system, which he found to be insufficient to support an easement, is clearly erroneous. Rather, the record supports a contrary conclusion that use of the lake was continuous and apparent.
The third prong of the test also requires that the easement be reasonably necessary to the use and enjoyment of the dominant tract. This determination requires a showing of need which, by definition, may be less than that required for establishing an easement by necessity, but must be something more than simple convenience. We have recognized that whether this element is established "generally will depend upon the circumstances of the particular case." Jones v. Beavers, 221 Va. 214, 221, 269 S.E.2d 775, 779 (1980).
Here, we hold that a purchaser of a lot would have a legitimate expectation of the right to access and use the lake where a visual inspection and reference to the plat incorporated in the deed of conveyance showed the existence of a lake within 20 feet of one's lot line, and where investigation would disclose that the 20-foot strip between the lake and the lot line was retained solely for certain utility and flood plain uses. The Canterbury East developers contemplated enjoyment of the lake, as a lake, by purchasers of the lots surrounding the lake. Under these circumstances, the easement at issue was reasonably necessary to the use and enjoyment of the lakeside lots.
An easement created by implication, which, as here, is appurtenant to the land, may be vitiated if, when the servient estate is purchased by another, the purchaser of the servient tract does not have notice of the easement or the use is not apparent. Under those circumstances, the purchaser takes the land free from such easement or use. Ricks v. Scott, 117 Va. 370, 384, 84 S.E. 676, 681 (1915). As discussed above, the evidence in this case supports a finding of a use which was apparent, continuous, and reasonably necessary to the enjoyment of the dominant tract. The record also clearly shows Scruggs' knowledge of the use. In addition to sending a letter indicating the lot owners could no longer use the lake without payment of a fee, Scruggs agreed that "numerous property owners were using the lake and had pumps in the water for getting water up on their lot[s]." Furthermore, Scruggs testified that shortly after purchasing the lake, he traversed the lake in a canoe and disconnected at least two of the existing sprinkler systems which used the lake water for lawn watering purposes, and Scruggs' actions show that the use of the lake by surrounding property owners was apparent, and that he was aware of the use.
At the time Scruggs purchased the lake, its use was apparent, continuous, and reasonably necessary to the enjoyment of property surrounding the lake. Therefore, we conclude that an easement by implication was established in favor of Russakoff for access to and use of Canterbury Lake.
In view of this holding, it is unnecessary to review Russakoff's claims to an easement created by prescription or by necessity.
In defense, Scruggs pled the equitable defense of laches. Scruggs argues that Russakoff and their predecessors in title knew of Scruggs' claim to ownership and control of the use of the lake and the adjoining 20-foot strip in 1984, yet did not seek to enforce their rights until they filed suit in 1988. In the interim, Scruggs expended over $8,200 to improve the condition *534 of the lake, including approximately $3,000 in insurance and taxes.
To prevail in this claim, Scruggs must show that Russakoff unjustifiably delayed filing suit and that that delay prejudiced him. Masterson v. Board of Zoning Appeals, 233 Va. 37, 47, 353 S.E.2d 727, 735 (1987). The record is not clear as to precisely when Scruggs expended the $8,231.53. Yet, the record does show that Scruggs knew that his assertion of control over use of the lake was under challenge prior to this litigation, when a group of landowners filed suit to assert their right to use the lake in 1985. That litigation, styled Metz v. Scruggs, No. 85C595, Rec. No. 880970 (Henrico Cir.Ct.1988), was concluded by letter opinion in 1988, holding that those landowners were entitled to use of the lake. Any funds expended for improvements after 1985 were spent at Scruggs' peril. On this evidence, it cannot be said that any prejudice Scruggs incurred based on his expenditure of funds was due solely, or at all, to Russakoff's actions.
Accordingly, we will reverse the judgment of the trial court and enter judgment in favor of the Russakoffs.
Reversed and final judgment.
RUSSELL, J., with whom COMPTON, J., joins, dissenting.
RUSSELL, Justice, with whom COMPTON, Justice, joins, dissenting.
In my view, Russakoff's claim is barred by laches. Russakoff[*] had clear notice, in 1984, that Scruggs asserted sole control over the waters of the lake and the intervening 20-foot strip of land. Russakoff then knew that he must either purchase an easement from Scruggs or resort to a court of equity to vindicate his claims. In the face of that knowledge, Russakoff waited four years before bringing this suit. During those four years of silence, Scruggs expended over $5,000 on physical improvements to the lake. Russakoff now seeks to enjoy the benefit of those improvements. That, it seems to me, is a classic fact pattern giving rise to the defense of laches.
NOTES
[*] Scruggs argued to the trial court, and on appeal, that Russakoff sought an "implied easement (or easement by estoppel as it is sometimes called)." However, while any easement which is unwritten may be characterized as "implied," Russakoff neither pled nor sought a declaration that an easement was created by estoppel.
[*] The terms "Russakoff" and "Scruggs" are here employed according to the conventions adopted by the majority opinion.