[Cite as *Meyers Lake Sportman's Club, Inc. v. Meyers Lake Preserve, Inc.*, 2013-Ohio-3227.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MEYERS LAKE SPORTMAN'S CLUB, INC. | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| MEYERS LAKE PRESERVE, INC. | : | Case No. 2012CA00198 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Stark County
Court of Appeals, Case No.
2011-CV-01990


JUDGMENT:        Affirmed


DATE OF JUDGMENT:        July 22, 2013


APPEARANCES:

For Plaintiff-Appellee

MARK A. GREER
TIMOTHY J. FITZGERALD
SHANE A. LAWSON
Gallagher Sharp
Sixth Floor – Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115

For Defendant-Appellant

AMANDA MARTINSEK
Thacker Martinsek LPA
2330 One Cleveland Center
1375 E. 9th Street
Cleveland, OH 44114

JAMES T. ROBERTSON
Robertson & Pidcock
The Carnegie Building
236 Third Street, SW
Canton, OH 44702

ALLEN SCHULMAN, JR.
Schulman, Zimmerman & Associates
The Carnegie Building
236 Third Street, SW
Canton, OH 44702

NICHOLAS J. HAMMOND
Thacker Martinsek LPA
3235 Levis Commons Blvd.
Perrysburg, OH 43551

CRAIG G. PELINI
KRISTEN E. CAMPBELL
Pelini, Campbell, Williams and Traub
Bretton Commons – Suite 400
8040 Cleveland Avenue NW
North Canton, OH 44720

*Baldwin, J.*

{¶1}    Defendant-appellant Meyers Lake Preserve, Inc. appeals from the October 1, 2012 Judgment Entry of the Stark County Court of Common Pleas granting the Motion for Summary Judgment filed by plaintiff-appellee Meyer's Lake Sportsman's Club, Inc. while denying its Motion for Summary Judgment.

STATEMENT OF THE FACTS AND CASE

{¶2}    Meyers Lake is a private, non-navigable body of water located in Stark County, Ohio that consists of 144 acres. Appellee Meyer's Lake Sportsman's Club was formed in approximately 1951 as a social welfare club and used the lake. At such time, the lake and all of the property surrounding it was owned by the Sinclair-Junger Partnership which was controlled by George Sinclair. George Sinclair, who was a member of the Sportsman's Club, provided facilities for the club, including a club house and docks and/or boat ramps, and granted appellee's members permission to use the lake for boating, fishing and swimming.

{¶3}    In 1974, the Sportsman's Club was incorporated. The stated purposes of such club included social activities and protecting and preserving wildlife and natural resources.

{¶4}    Pursuant to a general warranty deed that was recorded in 1981, the Sinclair-Junger Partnership transferred 1.644 acres of lakefront land to appellee Meyer's Lake Sportsman's Club, Inc. The deed provided that the property shall be used solely for Sportsman's Club purposes and that in the event that the property was no longer used for such purposes, title would revert back to the "Sinclair-Junger

Partnership, their heirs, assigns or successors in interest." The deed made no reference to lake or lake rights.

{¶5}    At the time the property was purchased by appellee, it was used as a landfill for dirt, gravel and chunks of concrete. After purchasing the property, appellee made numerous improvements to the same including adding a parking lot, building a lodge, adding a new boat ramp, building two fishing piers, and constructing boat docks.

{¶6}    In mid-1993, the Sinclair-Junger Partnership decided to sell the lake and all remaining lakefront land. A group of five individual owners of lakefront property pooled their money in order to purchase the lake as well as several adjacent lots. The adjacent lots were later sold for development. The five owners formed appellant Meyers Lake Preserve, Inc. which was incorporated in 1994 as a non-profit organization "organized exclusively for charitable, educational and scientific purposes." Appellant then applied to the Internal Revenue Service to become a 501(c)(3) tax-exempt charitable organization. In its application, appellant indicated that the lake "has traditionally been used by both adjoining property owners and others for fishing and boating." Appellant further represented on its application that it would not limit its benefit, services or products to specific individuals or classes of them. Appellant was granted tax-exempt status.

{¶7}    After purchasing the lake, appellant entered into a Management Agreement in July of 1996 with Meyers Lake Fish Dock, Inc, an entity separate and distinct from appellee Sportsman's Club but comprised mostly of the same members as the club. Under the terms of such agreement, the Fish Dock agreed to operate and manage the lake, to run the docks on appellee's property and to collect lake fees for

appellant. In exchange, appellant paid the Fish Dock's expenses for managing and operating the lake and allowed Fish Dock employees and members of the Sportsman's Club to use the lake without having to pay the yearly usage fee.   The agreement specifically states, in relevant part, as follows: " WHEREAS, MANAGER (Fish Dock) desires to operate a public fishing pier/dock and the Meyer's Lake Sportsman's Club, Inc. desires to make use of the LAKE for its members and their immediate family and guests, and by non-member ASSOCIATES…"w. MANAGER [Meyer's Lake Fish Dock, Inc.] and the Meyer's Lake Sportsman's Club, Inc. and their members and guests shall not be required to contribute to or pay any lake maintenance or user fees."  The Fish Dock operated a boat ramp and a marina on appellee's property. The ramp provided exclusive access to the docks on which lake residents and others kept their boats.

{¶8}    Thereafter, on December 27, 2010, appellant cancelled its Management Agreement with the Fish Dock and proposed a new agreement. Under the terms of the new agreement, appellee's and Fish Dock members would be required to pay to use the lake.  The Fish Dock rejected such agreement and appellee threatened a "lock-out" of non-members. In response, appellant's president, on or about April 18, 2011, sent  a letter to both appellee and Fish Dock stating that appellant had decided to withdraw its proposed management agreement. The letter further directed them to remove their fishing piers as well as any and all docks that they owned on appellant's property.

{¶9}    On June 30, 2011, appellee filed a complaint for declaratory judgment, injunctive relief, trespass, and quiet title against appellant. Appellee, in its complaint, sought punitive damages. On July 1, 2011, appellee filed a Motion for a Temporary Restraining Order and Preliminary Injunction. With leave of court, appellee filed an

amended complaint adding claims alleging breach of contract and tortious interference with contract and adding new parties in order to quiet title. On September 30, 2011, appellant filed an answer and counterclaim seeking a declaratory judgment that neither the Fish Dock nor appellee had any vested property right associated with the use of Meyers Lake. Appellant, in its counterclaim, also asserted claims alleging breach of contract, conversion, trespass, ejectment, and unjust enrichment.

{¶10} Both parties to this appeal filed Motions for Summary Judgment. Appellee, in its June 29, 2012 motion, sought summary judgment in its favor of the declaratory judgment and quiet title actions asserted in the amended complaint and on appellant's counterclaims for declaratory judgment, trespass, ejectment, and unjust enrichment. Appellant, in its June 29, 2012 motion, sought summary judgment on all of the claims asserted against it by appellee in the amended complaint. In addition, Meyer's Lake Fish Dock, Inc. filed a Motion for Summary Judgment on June 29, 2012. In such motion, it indicated that it was joining in the Motion for Summary Judgment filed by appellee with respect to the declaratory judgment action filed by appellant and further stated that it was seeking summary judgment in its favor on appellant's claim of conversion.

{¶11} As memorialized in a Judgment Entry filed on October 1, 2012, the trial court granted appellee's Motion for Summary Judgment while denying the Motion for Summary Judgment filed by appellant. The trial court, in its Judgment Entry, found that appellee had acquired an implied easement with regard to its beneficial use and enjoyment of the lake and granted appellee's Motion for Declaratory Judgment. The trial court further denied appellee's claims for trespass, breach of contract and tortious

interference with contract and appellant's counterclaims for trespass and ejectment. The trial court also denied appellant's Motion for Declaratory Judgment. Furthermore, the trial court, in its Judgment Entry, found that appellant's counterclaim for conversion against Fish Dock was moot. Finally, the trial court granted Fish Dock's Motion for Summary Judgment as to appellant's counterclaim for breach of contract.

{¶12}   Appellant now raises the following assignments of error on appeal:

{¶13} I.    THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE MEYERS LAKE SPORTSMAN'S CLUB, INC. FINDING AN IMPLIED EASEMENT.

{¶14} II.    THE TRIAL COURT ERRED IN DENYING MEYERS LAKE PRESERVE, INC.'S MOTION FOR SUMMARY JUDGMENT.

## Summary Judgment

{¶15}   Civ. R. 56 states in pertinent part:

{¶16} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to

have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

{¶17}  A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶18}  The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264. Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

{¶19}  It is pursuant to this standard that we review the assignments of error.

I

{¶20}   Appellant, in its first assignment of error, argues that the trial court erred in granting summary judgment in favor of appellee. Appellant specifically contends that the trial court erred in finding that appellee was entitled to an implied easement with regard to its beneficial use and enjoyment of the lake. We disagree.

{¶21}   "An easement is a right, without profit, created by grant or prescription, which the owner of one estate, called the dominant estate, may exercise in or over the estate of another, called the servient estate, for the benefit of the former." *Trattar v. Rausch*, 154 Ohio St. 286, 95 N.E.2d 685 (1950), paragraph one of the syllabus. An easement in or over the land of another may be acquired by specific grant, prescription, or implication from the particular set of facts and circumstances. *Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles*, 15 Ohio St.3d 79, 80, 472 N.E.2d 711 (1984).

{¶22}   Implied easements are based upon the principle that when an individual conveys property, he also conveys whatever is necessary for the use and enjoyment of that property.  *Trattar,* paragraph four of the syllabus. Implied easements are disfavored in the law as being contrary to the rule that written documents speak for themselves. *Id,* at paragraph three of the syllabus.

{¶23}   According to the Ohio Supreme Court, a party must prove four elements in order to demonstrate that it has acquired an implied easement: (1) that there is a severance of the unity of ownership in an estate, (2) that before the separation takes place, the use that gives rise to the easement must have been so long continued and obvious or manifest as to show that it was meant to be permanent, (3) that the easement is reasonably necessary to the beneficial enjoyment of the land granted or

retained, and (4) that the servitude is continuous as distinguished from a temporary or occasional use only. *Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles*, 15 Ohio St.3d 79, 80, 472 N.E.2d 711 (1984), citing *Ciski v. Wentworth*, 122 Ohio St. 487, 172 N.E. 276 (1930).

{¶24} In the case sub judice, the parties concur that the first, third and fourth prongs of the test for an implied easement set forth in the *Ciski* case have been met. They also concur that the land (the 1.644 acres) acres is the dominant estate while the lake is the servient estate. However, the parties disagree as to whether or not the second prong has been met. As is stated above, such prong requires that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent. The purpose of this requirement to  ensure that the condition that subjects the servient parcel to the dominant estate is intended to be permanent as opposed to temporary or casual. *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, fn 3 (12th Dist).

{¶25} With respect to the second prong, appellant argues that the trial court erred in failing to focus on whether and how the Sinclair-Junger Partnership (the common owner) used the 1.644 acres and whether the lake was used for the benefit of the 1.644 acres. Appellant notes that there was evidence that, prior to the severance, the 1.644 acres was vacant and undeveloped and was used as a dumping ground for concrete blocks and other items. According to appellant, appellee cannot establish that the Sinclair-Junger Partnership boated, fished or swam from the 1.644 acres prior to its

conveyance to appellee.  In turn, appellee argues that the trial court correctly focused on appellee's prior use of the lake.

{¶26}   We find that the trial court correctly focused on appellee's prior use of the servient estate in determining whether or not, before the separation took place, the use which gave rise to the easement was so long continued and obvious or manifest as to show that it was meant to be permanent. In *Yowonske v. MBD Constr. Co., Inc.,* 7th Dist. No. 09BE 10, 2010-Ohio-4185, the appellants appealed from a decision holding that appellees had an implied easement through prior use over the appellants' property. In such case, the Court of Appeals, in its Opinion, found, in part, that that the appellees had shown that the easement existed prior to the division of the property and that it had been continuously used by themselves and their predecessors in interest. Also, in *Hammond v. Klonowski*, 6th Dist. No. E-00-44, 2001 WL 740103 (June 29, 2001), cited by appellant, the court, in rejecting an implied easement for the homeowners to use an adjacent park, focused on the prior use of the would-be servient parcel. The trial court, in such case, stated that there was no evidence that anyone had used the park as a recreational area before the creation of the subdivision.   Thus, as noted by appellees, it is not the use of the dominant estate that is at issue, rather it is the continuous use that is made of the servient parcel.

{¶27}   Appellant, in its brief, argues that appellee cannot establish prior use of a vacant lot to create an implied easement to boat, fish and swim.  In the *Caldwallader* case, cited above, a developer subdivided an 80 plus parcel into smaller parcels. The developer sectioned off a strip of property and created an access road that was intended to traverse the subdivision once the back acres of the development were

developed. The appellants purchased a  vacant corner lot that was adjacent to both the access road and a state route.

{¶28}     In *Caldawaller*, the appellants then built their home. The driveway to the appellants' home emptied directly onto the access road. The developer later sold the remaining undeveloped property to the appellee, who installed a gate and blocked the appellants' access to the access road. The appellants then filed suit, alleging that they had acquired an easement by implication through prior use over the access road. The trial court disagreed with the appellants, who then appealed to the 12th District Court of Appeals.

{¶29}     In reversing the judgment of the trial court, the court, in *Cadwallader*, stated, in relevant part, as follows: "The road existed and was used by Arnold [the developer]   and his construction crew prior to the Cadwalladers' purchase of the land. Arnold created the road to allow access for dump trucks and other construction vehicles to reach Lot 3 and always intended future owners to use it to access land in the back acreage once he subdivided and developed it….the access road became permanent when Arnold laid gravel, began using it as a road, changed the building plans for the Cadwalladers' home and designated the road on the map as Lot 2A. Because these acts happened before Arnold severed his ownership in 1959 to the Cadwalladers, the evidence demonstrates that, contrary to the trial court's analysis, the second element is satisfied." Id at paragraphs 25, 29.

{¶30}   The trial court, in *Cadwallader*, relied on a Virginia case, *Russakoff v. Scruggs,* 241 Va. 135, 400 S.E. 2d 529 (1990).  As noted by the court in *Cadwallader*, "In  *Russakoff,* the court reversed a finding that an implied easement did not exist in

favor of a group of lot owners whose property surrounded a manmade lake. The lake, once owned by the developer, was later acquired at a tax sale by a man who then tried to charge the homeowners for using the lake. The owners responded and asserted that they had acquired an implied easement to use the lake, as it was recorded in the division plat map and was meant to be a permanent fixture of the community. The court agreed and concluded that 'at the time Russakoff's predecessors in title took possession of the dominant tracts, the servient tract was a lake. [A witness] testified as to the lake's existence, and the lake was reflected on the plat in the deeds conveying the dominate tracts to Russakoff's predecessors. The use of the servient tract as a lake, pre-existing the severance, was established.' Id. at 139, 400 S.E.2d 529." Id at paragraph 28.

{¶31}   Based on the foregoing, we find that the proper focus was on the use made of the lake, which was the servient estate by appellee.

{¶32}   Appellant, in their brief, also argue that the trial court erred when it considered hearsay evidence offered by appellee as to the Sinclair-Junger Partnership's alleged intent in finding that the Partnership, as prior owner, intended to create an implied easement. Appellee presented testimony that it had used the lake since 1951 for its activities, including sailing, fishing and boating. Specifically, Fred Rex, who has been a member of the Sportsman's Club for over 40 years, testified during his deposition that George Sinclair assured club members that they would have lake privileges if they purchased the land.   In addition, Robert Lombardi, Sinclair's own attorney, testified that the purpose of the Sportsman's Club was for fishing, boating and other lake activities. He further testified that when he signed the deed as signatory, the

deed reflected that the property was to be used solely for Sportsman's Club purposes and that, in his mind, the intent was to grant full lake privileges to appellee through the deed. He further testified that George Sinclair wanted appellee to enjoy the lake and that was the reason why Sinclair transferred the 1.644 acres to appellee. Appellant now contends that this hearsay evidence was offered in derogation of the Statute of Frauds.

{¶33} However, the Statute of Frauds is not applicable. As noted by the court in *Dunn v. Ransom*, 4th Dist. No. 10CA806, 2011-Ohio-4253 : "Courts may recognize an unrecorded easement, or an easement for which there was no written agreement between the parties, via the theory of an 'implied' easement, i.e., an easement implied from prior use. …In other words, a court that implies an easement is merely recognizing what the original property owner, who split up his land, intended to do, i.e., grant an easement in favor of the dominant tenement." *Id* at paragraph 33 (Internal citations omitted). If the Statute of Frauds applied, there could not be implied easements. Furthermore, as noted by the trial court, "servitudes, such as implied easements, which are not created by an express contract of conveyance are not covered by the Statute of Frauds. (See, REST. 3d PROP-SERV [Section] 2.8, comment b.)."

{¶34} While appellant further maintains that the doctrine of merger by deed applies and precludes the creation of an implied easement in this case, we disagree. The doctrine of "merger by deed" holds that whenever a deed is delivered and accepted without qualification pursuant to a sales contract for real property, the contract becomes merged into the deed and no cause of action upon said prior agreement exists. The purchaser is limited to the express covenants only. *37 Robinwood Assoc. v. Health Industries, Inc.*, 47 Ohio App.3d 156, 157–158, 547 N.E.2d 1019 (10th Dist. 1988). In

explaining the underpinnings of the doctrine of merger by deed, a  case quoted the author of a prominent treatise who noted the following: " 'In reality, this doctrine is merely an application of the contract doctrine of integration. Under this doctrine, all prior documents are considered to be integrated into the final contract, and only the provisions contained in the final contract are part of the agreement. This doctrine is the combined result of the parol evidence rule and the rule of interpretation which seeks to determine the intentions of the parties. Thus, if it can be shown that the parties actually intended that the provisions of a prior agreement continue in force, then the provisions do so continue. Similarly, the merger doctrine should only be applied as a canon of construction that attempts to  arrive at the true intention of the parties to a deed.' " *Newman v. Group One*, 4th Dist.. No. 04CA18, 2005-Ohio-1582,  paragraph 13 (quoting 14 Powell on Real Property (1995) 81A–136, Section 81A.07(1)(d)). Because the easement is not based on a written document, such doctrine is not applicable.

{¶35}   Based on the foregoing, appellant's first assignment of error is overruled.

II

{¶36}   Appellant, in its second assignment of error, argues that the trial court erred in denying its Motion for Summary Judgment.

{¶37}   As is stated above, appellant, in its June 29, 2012 motion, sought summary judgment on all of the claims asserted against it by appellee in the amended complaint.  Appellee, in its amended complaint, asserted claims for breach of contract, tortious interference with contract and trespass against appellant. Appellee also filed a Motion for Summary Judgment. Appellee, in its motion, sought summary judgment in its favor on the declaratory judgment and quiet title actions asserted in the amended

complaint as well as appellant's counterclaims for declaratory judgment, trespass, ejectment and unjust enrichment.

{¶38}   The trial court,  in its October 1, 2012 Judgment Entry, denied appellant's Motion for Summary Judgment while granting the Motion for Summary Judgment filed by appellee. The trial court, in its Judgment Entry, expressly denied appellee's claims for breach of contract and tortious interference with contract and trespass based on its decision that appellee was entitled to an implied easement.

{¶39}   Because the trial court denied appellant's Motion for Summary Judgment, CIv.R. 56 was not the basis for the trial court's resolution of appellee's claims alleging trespass, breach of contract and tortuous interference. Moreover, appellant, in its brief, argues that "[w]ithout an implied easement, [appellee's]  claims for …breach of contract, trespass and tortious interference also fail." Having found, with respect to appellant's first assignment of error, that the trial court did not err in holding that appellee had an implied easement over the lake, appellant's second assignment of error is overruled.

{¶40} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.


By: Baldwin, J.

Wise, P. J. and

Delaney, J. concur.


_____
HON. CRAIG R. BALDWIN


_____
HON. JOHN W. WISE


_____
HON. PATRICIA A. DELANEY


CRB/dr

[Cite as *Meyers Lake Sportsman's Club, Inc. v. Meyers Lake Preserve, Inc.*, 2013-Ohio-3227.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MEYERS LAKE SPORTMAN'S CLUB, INC. | : | |
| | : | |
| Plaintiff - Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MEYERS LAKE PRESERVE, INC. | : | |
| | : | |
| Defendant -Appellant | : | CASE NO. 2012CA00198 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs assessed to appellant.

_____
HON. CRAIG R. BALDWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY