**FREIDEN, Appellee v WESTERN BANK & TRUST CO., et, Appellants**

Ohio Appeals, 1st District, Hamilton County.

No. 6228.   Decided April 12, 1943.

Roy L. Struble, Cincinnati, and John J. Cooney, Cincinnati, for appellee.

Peck, Shafer & Williams, Cincinnati, for appellant, The Western Bank & Trust Co.

Littleford Hunemeyer, Cincinnati, for Clifford A. Wagner, Anna May Pape, and Marie Claussen.

## OPINION

By HILDEBRANT, J.

Plaintiff, appellee, owner of a lot on the north side of Hollister Street in the City of Cincinnati, Ohio, between Vine Street and Auburn Avenue, acquired by deed of general warranty from defendant Western Bank and Trust Company, sued the bank and the owners of eight lots adjacent to and immediately to the east of his lot, seeking a declaratory judgment to determine the status and the rights and duties of the parties with respect to a certain sewer traversing all of said lots from a point in the most easterly lot to a point in plaintiff's lot, thence at right angles along the west side of plaintiff's lot to a public sewer in Hollister Street, extending in an easterly direction in Hollister Street to a point in front of the second lot to the east of plaintiff's lot. Answers claiming a sewer easement were filed and the court below found a sewer easement created by implication appurtenant to each of said properties.

The facts which are undisputed and set forth in the record of the testimony and by stipulation are that Jason Evans died in 1876 owning the whole tract which thereafter became in 1890 the sole property of his son Benjamin Evans, who died in 1913. That, the exact date being unknown, but for more than thirty years, a sewer had been constructed through the rear of all nine lots involved and in addition extending along the west side of plaintiff's lot into a public sewer in Hollister Street now maintained by the City. That all of this time said sewer was equipped with four standard manholes 23½ inches in diameter, extending 3 to 4 inches above ground, being apparent and manifest on examination and located on lots 1, 2, 6, and the last lot to the east. That a severance of the unity of ownership first took place when Benjamina Evans granted the present Pape lot by deed of general warranty to her predecessor in title on May 11, 1912, there being no reference in the deed to the existing sewer running through said lot. In none of the conveyances in any of the chains of title to any of the lots is any reference made to the existence of said sewer, which all the while pro-

vided and now provides the only means of sewage disposal for all the lot owners herein. The testimony further shows that as far back as January 28, 1892, the private sewer was in use and apparently had been for a number of years and that various ones of the manholes were visible for some distance including the one on plaintiff's lot which was visible from the street and that the present owners and their predecessors in title used and maintained said private sewer continuously since that time.

It is contended there is no showing of any controversy which would entitle plaintiff to a declaratory judgment. §§12102-1, 12102-2, 12102-11 GC.

From a reading of the above sections of the Code it is apparent the instant case is not only a proper one, but that the remedy is peculiarly applicable under the facts.

Surely, those lot owners whose only sewer outlet is through plaintiff's land have rights, legal relations, and a status to be declared under their deeds which would be vitally affected by plaintiff's potential action, and which would not be adjudicated in a suit between plaintiff and the bank on the warranty in a deed. Jurisdiction to grant a declaratory judgment is not limited by the terms of the statute to cases where no remedy is available either at law or equity, but may be alternative, and the Court finds a real controversy between adverse parties justiciable in character with relief necessary to the preservation of rights does exist, and the action, therefore, properly before the Court. **Schaefer v First National Bank, 134 Oh St 511, 18 N. E. (2d.) 263.**

Appellant claims there was no intention on the part of any grantor to establish an easement by implication and no necessity for a sewer through plaintiff's premises, by reason of the Hollister Street sewer being available to the adjoining premises.

The Court is mindful of the rule that written instruments shall speak for themselves, the maxim that no man can derogate from his own grant and the tendency of the courts to discourage implied grants and reservations of easements as doing violence to recording acts, and approaches the decision of this case accordingly.

While ordinarily an easement is a right or interest in the land of another, the owner of an entire tract or of two or more adjoining parcels may so use a part thereof as to create an apparent servitude termed a quasi-easement in favor of another portion to which the use becomes appurtenant. Upon a severance of the whole by conveyance of the quasi-dominant tenement with no express reference in the deed to the servitude, an implied easement may be held to have been granted, depending upon the nature and character of the use imposed upon the quasi-servient part by the law's presumption that

244

the parties contracted with reference to those conditions at time of sale and that grantor intended to convey a right to the use involved and the grantee reasonably expected to take and hold such right. 9 R. C. L., page 754.

The doctrine is likewise applicable to the creation of an easement by implication upon severance of the estate by implied reservation to the grantor. Since a grant is taken more strongly against the grantor, the law will imply the grant of an easement more readily in favor of a grantee than the reservation of an easement in the grantor. 9 R. C. L. par. 28.

For many years and in many cases Ohio has held to the doctrine that where an owner of land makes an apparent, permanent, and necessary use of one part of his land in favor of another part, and transfers either or both parts, the grant or reservation of an easement to continue such existing use will be implied.

In **National Exchange Bank v Cunningham, 46 Oh St**, at page **587**, it is stated:

"It is a well settled doctrine of the law of easements, that where there are no restrictive words in the grant, the conveyance of the land, will pass to the grantee, all those apparent and continuous easements which have been used, and are at the time of the grant used by the owner of the entirety for the benefit of the parcel granted; and also, all that appear to belong to it, as between it, and the property which the vendor retains; * * *"

The severance of the unity of ownership in this case occurred on May 11, 1912, when Benjamin F. Evans granted the Pape parcel, part of Lot 4, to her predecessor in title by deed of general warranty and without reference to the existing sewer. At that time, reasonable inspection would have disclosed no sewer in Hollister Street in front of the premises, but manholes apparent and obvious on the lots on either side in the immediate vicinity indicating the course of the sewer in the rear and a use inherently continuous rather than temporary implying permanency and a reasonable necessity to the beneficial enjoyment of the premises granted, and no doubt an element in arriving at the consideration involved. 9 R. C. L., page 761. The apparent signs of servitude which will pass as easements on severance of a heritage include not only those which must necessarily be seen, but those which may be seen or ascertained on a careful inspection by persons ordinarily conversant with the subject. Hence,

it is that underground drains may pass by implied grant, even though not visible from the surface.

In **15 O. Jur., p. 42,** it is stated:

"Even though the use is not apparent, and there is no notice thereof whatsoever, it has been suggested that an easement may be implied if the use is strictly necessary and the common owner has intended the use to become an easement appurtenant to the property benefited thereby." Citing, Keyler v Eustis, 13 O. N. P. (n. s.) 601.

The requisites for applying the doctrine of implied easements have been set forth by the Supreme Court of Ohio in **Ciski v Wentworth, 122 Oh St 487.** The first paragraph of the syllabus is:

"While implied grants of easements are not favored, being in derogation of the rule that written instruments shall speak for themselves, the same may arise when the following elements appear: (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only."

The remaining lots were all granted by the Evans estate during the year 1921 except for the Pins parcel, granted by the Estate in 1917 and the record being silent as to Lot No. 7.

The Court feels that all of the essential elements set forth by our Supreme Court are present in this case as to all of the lots involved. See: **15 O. Jur., §§27 to 44,** inclusive, for an excellant discussion of the subject and citation of many cases.

Counsel attempts to distinguish **Ciski v Wentworth, 122 Oh St 487,** by pointing out the exceptions contained in the deed. However, from a reading of the case it appears the court based its conclusions on the surrounding circumstances of the parties at the time of the conveyances from the common owner rather than upon any expression or language in any of the deeds.

A decree may be entered in this Court similar to the one entered in the Court of Common Pleas.

ROSS, PJ., & MATTHEWS, J., concur.