CADWALLADER et al., Appellants,

v.

SCOVANNER Jr., Trustees, Appellee.

[Cite as *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2007-06-072.

Decided Aug. 18, 2008.

Barrett & Weber, M. Michele Fleming, and Thomas W. Breidenstein, for appellants.

Gary A. Rosenhoffer, for appellee.

WALSH, Presiding Judge.

{¶ 1} Plaintiffs-appellants, Larry and Izella Cadwallader, appeal the decision of the Clermont County Court of Common Pleas finding that appellants did not have an easement over a portion of property owned by defendant-appellee, Liveo Scovanner. We affirm the trial court's ruling in part, reverse in part, and remand for further proceedings.

## I. Statement of Facts

{¶ 2} The Cadwalladers own residential property located on the west side of State Route 133 in Williamsburg Township. In 1959, the Cadwalladers purchased their lot from Clyde Arnold, who contracted to build a home on the property. Arnold owned an 80–plus–acre parcel and subdivided the land into smaller lots known collectively as the Saratoga Park Subdivision. Within the subdivision, Arnold sectioned off ten lots, numbered one through nine, and one numbered 2A on which Arnold planned to create a public road to provide access to the third lot and the rear acreage yet to be developed.

{¶ 3} In April 1959, Arnold created the road on lot 2A and recorded the plat map with the Clermont County recorder, months before the Cadwalladers purchased their lot from Arnold. Once the back acres were developed, Arnold had planned on dedicating 2A as a public thoroughfare. When the Cadwalladers came to view the property before buying it, the road was lined with gravel and Arnold's construction crew was actively using it. For this reason, the Cadwalladers began negotiations to buy the third lot, which was considered a "corner lot" because the 2A designated road was adjacent to the southern edge of Lot 3's property line. The Cadwalladers found this lot preferable because Arnold told him that he could use the access road to connect with State Route 133.

{¶ 4} During the planning stages for construction, the Cadwalladers and Arnold discussed the location of the driveway and garage because they did not want his driveway to connect directly with State Route 133. To accommodate the Cadwalladers' request, Arnold agreed to build the garage on the side of the

house, instead of on the front as was the case with the other houses in the subdivision, so that the garage and driveway would empty onto the 2A access road. From 2A, the Cadwalladers could then turn onto State Route 133 so that the access road became an integral part of the Cadwalladers' ingress to and egress from their home. Before the Cadwalladers moved in, Arnold's builders continued to use the road to access the Cadwalladers' newly purchased lot for construction purposes. In accordance with their agreement, Arnold built the Cadwalladers' garage facing the access road and created the driveway so that it emptied directly onto the access road.

{¶ 5} Though Arnold intended to develop the back 32 acres of his land, he later learned that installing the necessary sewage system would be too expensive. At that point, Arnold placed the remaining undeveloped acres up for sale, and Scovanner later purchased them. Scovanner came out to the property multiple times to view the property before he purchased the acres. By the time he came to view the property in 1967, the road had been blacktopped, and Scovanner could see that the road provided access to the Cadwalladers' personal driveway.

{¶ 6} When Scovanner bought the remaining acres, the deed conveying the land from Arnold to Scovanner did not mention the Cadwalladers' use of 2A as providing access to their driveway. Though it was a fact in dispute at trial, the trial court found that approximately six to eight weeks after purchasing the land, the Cadwalladers asked Scovanner whether he would grant them an express easement over the road. Scovanner refused the request but told them that as long as he owned the property, the Cadwalladers could use the road to access their driveway. From that date on, the Cadwalladers have so used the road. At trial, the Cadwalladers presented two canceled checks that indicated that they had been tendered as payment for repaving and sealing the portion of the road that ran adjacent to the Cadwalladers' 200–foot lot. The Cadwalladers also cut the grass that abutted the road and also plowed snow from the road equal to the length of their lot.

{¶ 7} At some point, Scovanner renamed the 2A access road Scovanner Lane and the current recorded plats recognize the road as such. In 1999, Scovanner installed a gate approximately 30 feet back from State Route 133 because he wanted to keep the public from wandering back onto his property. Scovanner did not lock the gate, and the Cadwalladers would simply open it and reclose it if they had to leave their house.

{¶ 8} At various times during the 35 years that Scovanner has lived on the property up until immediately before they filed suit, the Cadwalladers renewed their request for a written easement, but each time, Scovanner refused. In August 2006, the Cadwalladers filed suit, asserting that they had acquired an easement either by prescription, estoppel, implication by prior use, or implication

by way of necessity. After a trial, the trial court denied each claim and held that the Cadwalladers had failed to acquire an easement over Scovanner's property. It is from this decision that the Cadwalladers timely appealed, raising three assignments of error. Because the third assignment of error is dispositive of this appeal, we will address the assignments out of order.

## II. Appellate Review of Easements

{¶ 9} When reviewing the decision of a trial court as to whether an easement exists, an appellate court will not reverse the judgment as being against the manifest weight of the evidence if the judgment of the trial court is based on some competent, credible evidence going to all essential elements of the case. *125 Properties v. Regency Ctrs.*, Clermont App. No. CA2005–08–076, 2006–Ohio–1438, 2006 WL 763135. Because the trial court is best able to view the witnesses, observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the witnesses, a reviewing court will presume that the trial court's findings of fact are accurate. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

{¶ 10} An easement, as defined by the Ohio Supreme Court, is " 'a right without profit, created by grant or prescription, which the owner of one estate [called the dominant estate] may exercise in or over the estate of another [called the servient estate] for the benefit of the former.' " (Bracketed material sic.) *Trattar v. Rausch* (1950), 154 Ohio St. 286, 291, 43 O.O. 186, 95 N.E.2d 685, quoting *Yeager v. Tuning* (1908), 79 Ohio St. 121, 124, 86 N.E. 657. The dominant estate may acquire an easement by prescription or by an expressed or implied grant. Id. In Ohio, "[i]mplied easements are not favored because they are in derogation of the rule that written instruments speak for themselves." Id. However, a party that clearly demonstrates that it has acquired a right to use the land of another may establish an easement by implication. Id.

## III. Implied Easements

{¶ 11} Assignment of error No. 3:

{¶ 12} "The trial court erred as a matter of law in failing to declare an implied easement/easement by necessity."

{¶ 13} In the third assignment of error, the Cadwalladers argue that the trial court erred when it found that they did not have an implied easement or easement by necessity over Scovanner's property. While the trial court properly found that an easement by necessity did not exist, the Cadwalladers' argument that the trial court erred in its analysis of an implied easement by prior use is meritorious.

{¶ 14} The Cadwalladers assert that their use of the access road should constitute an implied easement and argue that the implication arises from either necessity or prior/existing use. While the Cadwalladers combine the two types into a single assignment of error, a different analysis is called for when determining whether an easement is warranted by prior use or necessity. Though the elements are the same for both an implied easement by way of necessity and use, different standards apply when analyzing the third element. Therefore, we will address the assignment as two separate analyses and will imitate the trial court's organization to facilitate understanding.

A. Implied Easements

{¶ 15} According to the Ohio Supreme Court, a party must prove four elements in order to demonstrate that it has acquired an implied easement: (1) that there is a severance of the unity of ownership in an estate, (2) that before the separation takes place, the use that gives rise to the easement must have been so long continued and obvious or manifest as to show that it was meant to be permanent, (3) that the easement is reasonably necessary to the beneficial enjoyment of the land granted or retained, and (4) that the servitude is continuous as distinguished from a temporary or occasional use only. *Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles* (1984), 15 Ohio St.3d 79, 15 OBR 182, 472 N.E.2d 711, citing *Ciski v. Wentworth* (1930), 122 Ohio St. 487, 172 N.E. 276.

{¶ 16} Regarding the second element, "for a use to be permanent in character * * * a mere temporary provision or arrangement made for the convenience of the entire estate will not constitute that degree of permanency required to burden the property with a continuance of the same when divided or separated by conveyance to different parties." *Trattar,* 154 Ohio St. at 292, 43 O.O. 186, 95 N.E.2d 685. Instead, the use must be continuous, apparent, permanent, and necessary to the use and enjoyment of the land. *Campbell.* Use will be considered apparent when it is "plainly visible." Id., 15 Ohio St.3d at 81, 15 OBR 182, 472 N.E.2d 711.

{¶ 17} An analysis of an implied easement necessitates consideration of both the owner's intent at severance and what occurs between subsequent owners of the dominant and servient estates. Id. "Where an owner of two parcels of land subjects one of them to an easement in favor of the other and where such owner sells the dominant parcel without providing for that easement in his grant and where the enjoyment of such easement is reasonably necessary to the beneficial enjoyment of the parcel granted, it may reasonably be inferred that the parties mutually intended there should have been a grant of such easement." *Renner v. Johnson* (1965), 2 Ohio St.2d 195, 197, 31 O.O.2d 406, 207 N.E.2d 751.

{¶ 18} As mentioned above, two types of implied easements are at issue in this case: an implied easement by necessity and an implied easement by prior use. While the above four elements must be established in each type of easement, the analysis of the third element differs so that each type of implied easement is analyzed separately below.

## B. Implied Easement by Necessity

{¶ 19} In addition to the four elements, an implication by necessity is based on the theory that "without it the grantor or grantee, as the case may be, can not make use of his land. It has been stated that 'necessity does not of itself create a right-of-way, but is said to furnish evidence of the grantor's intention to convey a right-of-way and, therefore, raises an implication of grant.' " *Trattar*, 154 Ohio St. at 293, 43 O.O. 186, 95 N.E.2d 685, citing 17 American Jurisprudence 961, Section 48.

{¶ 20} The trial court addressed three of the four elements of an implied easement by necessity and concluded that the Cadwalladers failed to meet the second and third elements. The trial court then reasoned that analyzing the fourth element was unnecessary because a failure to fulfill any of the four elements rendered the finding of an implied easement inapposite. By finding two elements lacking, the trial court concluded that an implied easement by necessity was not warranted.

{¶ 21} The trial court properly concluded that the Cadwalladers fulfilled the first element, a severance of the unity of ownership. Clyde Arnold[1] owned the land before it was subdivided and later severed his unity of ownership by selling Lot 3 to the Cadwalladers while he retained Lot 2A and other acres, and then completed the severance by selling later to Scovanner.

{¶ 22} The second element requires continued and obvious use prior to separation that shows the easement was meant to be permanent. The trial court opined that "the evidence fails to show that the use which gave rise to the easement had been so long continued and obvious or manifest as to show that it was meant to be permanent." The court concluded that the subdivision was platted in April 1959 and that Arnold conveyed to the Cadwalladers later that year so that not enough time has passed to demonstrate that the road was meant to be permanent. The court then cited *Ciski*, in which the use of an access road

---

1. The trial court's decision mistakenly states that "Virgil Arnold sold Lot 3 to the Plaintiffs and retained Lot 2A." While Virgil was involved in the construction of the Cadwalladers' home and provided an affidavit regarding the pertinent facts, he did not own the land in question. Instead, Clyde Arnold, Virgil's father, conveyed Lot 3 by deed to the Cadwalladers and was the seller of record.

exceeded 25 years before the court affirmed the grant of an implied easement. 122 Ohio St. 487, 172 N.E. 276. We find error in this conclusion.

{¶ 23} Unlike a prescriptive easement,[2] which requires strict adherence to continual use for 21 years, an implied easement does not require passage of any set amount of time. Instead, the use that gives rise to the easement must have been so long continued and obvious as to show that it was meant to be permanent. The time necessary to establish the permanency of the road is therefore central to our analysis.

{¶ 24} The trial court interpreted the element to require a passage of time longer than that which passed between Arnold's subdivision of his property in April 1959 to when the Cadwalladers severed his ownership by purchasing Lot 3. However, the road was in use long enough to establish its permanency before Arnold severed his ownership.

{¶ 25} The road existed and was used by Arnold and his construction crew prior to the Cadwalladers' purchase of the land. Arnold created the road to allow access for dump trucks and other construction vehicles to reach Lot 3 and always intended future owners to use it to access land in the back acreage once he subdivided and developed it.

{¶ 26} At trial, Cadwallader testified that when he came out to view the property that he would eventually buy, there was already gravel on the road and he could tell that it was being used by Arnold's construction crew. Cadwallader also testified that he specifically chose the "corner lot" and had Arnold build his garage facing the access road. Without the permanent road, there could not have been a corner lot, because the Cadwalladers' lot is third in a series of nine plots of land, separated only from Lot 2 by the access road. It is reasonable to conclude that neither Arnold nor Cadwallader would position the garage and driveway to empty onto a road that was not permanent. If Arnold had created the access road to be used only during the construction of the Cadwalladers' house, he would not have agreed to change the building plans and place the garage on the other side of the house so that the Cadwalladers' ingress and egress depended on use of the access road. Instead, Arnold created the permanent road and always intended to dedicate it as a public thoroughfare once the back acres were developed.[3] Though Arnold's intent to further subdivide was

---

**2.** As discussed below, before a party may claim a prescriptive easement over another's property, the party's use must be open, notorious, adverse, and continuous for at least 21 years. *Jones v. Alvarez*, Butler App. No. CA2006–10–257, 2008–Ohio–1994, 2008 WL 1849695.

**3.** Restatement of the Law 3d, Property (2000), Section 2.12, discusses the importance of the parties' intent regarding the continuance of use after severance. "The prior use must have been such as to give rise to the inference that the parties expected the use to continue after

derailed by the exorbitant cost of installing a sewage system on the back acres, the road had already existed long enough to establish its permanency.

{¶ 27} Perhaps the greatest evidence of the road's permanency lies in the plat map of the Saratoga Park Subdivision as recorded in 1959.[4] The plat map lays out a total of ten parcels and clearly designates 2A as being wholly separate from the other lots numbered one through nine. The map was approved by the Clermont County engineer on April 10, 1959, and a registered surveyor certified the map as being "a correct representation of the land surveyed and platted and that the lots have been staked and reference monuments have been set or found to exist." Therefore, the recorded map speaks to the road's permanency even before Arnold sold to the Cadwalladers.

{¶ 28} Other states analyze permanency in similar terms. The Virginia Supreme Court recognized "the creation of an easement by reference in the deed to a plat showing the road, even if the street or road had not been created or was not being used at the time of conveyance." *Russakoff v. Scruggs* (1991), 241 Va. 135, 400 S.E.2d 529. In *Russakoff*, the court reversed a finding that an implied easement did not exist in favor of a group of lot owners whose property surrounded a manmade lake. The lake, once owned by the developer, was later acquired at a tax sale by a man who then tried to charge the homeowners for using the lake. The owners responded and asserted that they had acquired an implied easement to use the lake, as it was recorded in the division plat map and was meant to be a permanent fixture of the community. The court agreed and concluded that "at the time Russakoff's predecessors in title took possession of the dominant tracts, the servient tract was a lake. [A witness] testified as to the lake's existence, and the lake was reflected on the plat in the deeds conveying the

---

severance. Traditionally this requirement has been stated in terms of continuous, or permanent, use. However, focusing on the reasonable expectations of the parties gives the more accurate view, which is that the use must be more than merely temporary or casual."

4. {¶ a} The plat map was incorporated into the deed conveying the property from Arnold to Cadwallader because the deed made reference to the lot number on the recorded plat map. See *Krzewinski v. Eaton Homes, Inc.* (1958), 108 Ohio App. 175, 9 O.O.2d 206, 161 N.E.2d 88, paragraph two of the syllabus, citing III American Law of Property, Section 12.103 ("When land is conveyed by the lot number of a recorded plat, the plat becomes as much a part of the description as would be the case if copied into the conveyance, or if the data furnished by the plat were set out in full in conveyance").

{¶ b} In full, the deed describes the conveyed real estate as "situated in Military Survey 310, Williamsburg Township, Clermont County, Ohio, and being all of Lot No. 3 of Saratoga Park Subdivision as the same is known and designated on the plat of said subdivision, recorded in Plat Book K, page 16, Recorder's Office, Clermont County, Ohio, being a part of the real estate conveyed to the grantors by deed in Deed Book 339, page 121, Recorder's Office, Clermont County, Ohio."

dominate tracts to Russakoff's predecessors. The use of the servient tract as a lake, pre-existing the severance, was established." Id. at 139, 400 S.E.2d 529.

{¶ 29} Just as the lake became a permanent part of the subdivision when it was created and platted on the map, the access road became permanent when Arnold laid gravel, began using it as a road, changed the building plans for the Cadwalladers' home and designated the road on the map as Lot 2A. Because these acts happened before Arnold severed his ownership in 1959 to the Cadwalladers, the evidence demonstrates that, contrary to the trial court's analysis, the second element is satisfied.

{¶ 30} However, with regard to the third element, which calls for a strict necessity of use, the trial court properly concluded that the Cadwalladers could not demonstrate that the easement was strictly necessary for the use and enjoyment of their property. When a party asserts an implied easement via necessity, the court will apply a strict standard so that "an easement will not be implied where there is an alternative outlet to a public way, even though it is less convenient or more expensive." *Tiller v. Hinton* (1985), 19 Ohio St.3d 66, 69, 19 OBR 63, 482 N.E.2d 946.

{¶ 31} The trial court reviewed the element in terms of the Cadwalladers having an alternate means of ingress and egress. At trial, Christine Hilbert, a representative from the Ohio Department of Transportation ("ODOT"), testified to the present conditions of the Cadwalladers' driveway situation. While ODOT recommended that the arrangement using Scovanner Lane stay intact for public-safety concerns, Hilbert testified that they would grant the Cadwalladers a curb cut so that they could redirect their driveway to connect directly with State Route 133 if the Cadwalladers were denied an easement.

{¶ 32} The trial court also reviewed photographs of the Cadwalladers' property and the positioning of their driveway in its current state. It concluded that redirecting the driveway to connect directly with State Route 133 would be less convenient and would cost money, but then found that the expense and inconvenience did "not rise to the level of strict necessity." We find no error in the trial court's conclusion that the third element of an implied easement by necessity was not established.

{¶ 33} Instead of analyzing whether or not the Cadwalladers' use was continuous as distinguished from a temporary or occasional use only, as required by the fourth element, the trial court concluded that an easement by necessity did not exist, because the Cadwalladers failed to satisfy the second and third elements without analyzing the fourth element. While this court rejects the trial court's analysis of the second element, the Cadwalladers ultimately failed to establish a strict necessity regarding their use of Scovanner Lane as required by the third

element. Accordingly, their argument in the third assignment of error regarding an easement by necessity is without merit.

### C. Implied Easement by Prior Use

{¶ 34} Though we reach the same conclusion as the trial court concerning the failure to establish an implied easement by necessity, the court's erroneous analysis of the second element affects our analysis of the Cadwalladers' claim that they have acquired the second type of implied easement claimed, an easement by prior use.

{¶ 35} Because analysis of the first two elements is the same in both types of implied easements at issue, we recognize that the trial court's error with regard to the second element tainted its subsequent analysis of whether an implied easement via use existed. While the trial court recognized that the elements set forth in *Campbell* apply to prior use easements, it once again failed to analyze the facts as they applied to the second element so that the decision was not based on competent and credible evidence and was therefore against the manifest weight of the evidence.

{¶ 36} Considered in conjunction with the four necessary elements, an implication via prior use is based on the theory that "where an owner of land makes an apparent, permanent, and necessary use of one part of his land in favor of another part, and transfers either or both parts, the grant or reservation of an easement to continue such existing use will be implied." *Freiden v. W. Bank & Trust Co.* (1943), 72 Ohio App. 471, 27 O.O. 419, 50 N.E.2d 369.

{¶ 37} When analyzing the third element, a court will apply a standard of reasonable necessity when a party asserts an implied easement by way of prior use. *Martin v. Sheehy* (1986), 33 Ohio App.3d 332, 515 N.E.2d 1000. "The law relating to implied easements based upon an existing and prior use does not require us to entertain the alternative possibilities * * *." *Mapes v. Smith,* Cuyahoga App. No. 81065, 2003–Ohio–428, 2003 WL 194866, ¶ 23 (finding reasonable necessity even though zoning board agreed to grant a variance if denial of the easement left plaintiffs landlocked and because there were safety concerns and increased costs associated with constructing a new driveway). Instead, "it is necessary to determine the extent of the use, the character, and the surroundings of the property, the relationship of the parts separated to each other, and the reason for giving such construction to the conveyances as will make them effective according to what must have been the real intent of the parties; the foundation of the rule being that there shall be held to have been included in the conveyances all the rights and privileges which were incident and necessary to the reasonable enjoyment of the thing granted, practically in the same condition in which the entire property was received from the grantor." *Ciski,* 122 Ohio St.

at 495–496, 172 N.E. 276 (finding reasonable necessity when the plaintiffs used a 12–foot strip of land for ingress and egress, hauling coal and wood, and "other domestic uses").

{¶ 38} Here, the trial court applied its flawed reasoning to the second element and decided that "the court has already found, in its analysis of the easement by necessity argument, that Plaintiffs failed to establish element two * * * [and that] therefore Plaintiffs' claim that there is an implied easement fails." It therefore did not address the second, third, or fourth elements as they apply to the second type of an implied easement. While the trial court properly recognized that an implied easement by prior use requires a lesser showing than a strict necessity, it deemed that distinction irrelevant because it had already decided that the Cadwalladers had failed to fulfill the second element.

{¶ 39} The first and second elements are satisfied because Arnold was the common owner and had established the road's permanency before he severed his unity of ownership. The third and forth elements become important because if using Scovanner Lane is reasonably necessary to the Cadwalladers' use and enjoyment of their property and was continuous so as to distinguish it from a temporary use only, then they will have acquired an implied easement over Scovanner Lane.[5]

{¶ 40} Therefore, because the court did not analyze the final two elements, the Cadwalladers' third assignment of error, as it relates to implication via use, is sustained. On remand, the trial court shall consider the third and fourth elements in order to determine whether the Cadwalladers' use of Scovanner Lane is reasonably necessary to facilitate the use and enjoyment of their property and whether the servitude has been continuous as to distinguish it from a temporary or occasional use only in accordance with *Ciski, Campbell,* and their progeny.

## IV. Conditional Easement

{¶ 41} Assignment of error No. 1:

{¶ 42} "The trial court erred as a matter of law in failing to hold that the conditional easement granted by the grantor Arnold on condition of defeasance

---

5. {¶ a} Granting an implied easement is an equitable remedy, so that a court must not decree that one exists if the servient estate was purchased by another who did not have notice of the easement because the use was not apparent. The unaware subsequent owner of the servient estate therefore takes the land free of the easement. *Tiller v. Hinton* (1985), 19 Ohio St.3d 66, 19 OBR 63, 482 N.E.2d 946.

{¶ b} Here, Scovanner testified that when he went out to view the property multiple times before purchasing it, each time he could clearly see the setup of the Cadwalladers' driveway and that they used the access road for ingress and egress to and from State Route 133. Therefore, Scovanner saw the apparent use and cannot be said to have been a purchaser without notice.

upon dedication of lot 2A as a public street remains in effect since the condition has not occurred."

{¶ 43} In their first assignment of error, the Cadwalladers assert that the court erred by not finding that they had acquired a conditional easement. As this argument was not raised at trial and the circumstances do not otherwise fall within the forgiving confines of Civ.R. 15(B), this court will not consider the Cadwalladers' assertion.

{¶ 44} According to Civ.R. 15(B), a party may amend their pleadings to conform to evidence offered at trial. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment." But see *Eland v. Cleversy*, Lake App. No.2005–L–072, 2006–Ohio–3416, 2006 WL 1816278 (finding that appellant did not comply with Civ.R. 15(B), because she never moved to amend her complaint to conform to the evidence and therefore waived the claim she tried to raise in her objection to the magistrate's decision); and *In re Election Contest of Democratic Primary Held May 4, 1999 for Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 725 N.E.2d 271 (refusing to consider the merits of appellant's unpleaded claims when he never sought to amend his petition to include them, the parties did not expressly or impliedly consent to trial of the claims, and the trial court never considered the claims).

{¶ 45} Based on the theory that cases ideally should be decided on their merits rather than procedural technicalities, the rule articulates a liberal policy toward permitting amendments. *Stafford v. Aces & Eights Harley–Davidson, L.L.C.*, Warren App. No. CA2005–06–070, 2006–Ohio–1780, 2006 WL 902556. However, appellate courts do not ordinarily consider questions not presented to the court whose judgment it is reviewing. *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 679 N.E.2d 706. "These rules are deeply embedded in a just regard to the fair administration of justice. They are designed to afford the opposing party a meaningful opportunity to respond to issues or errors that may affect or vitiate his or her cause. Thus they do not permit a party to sit idly by until he or she loses on one ground only to avail himself or herself of another on appeal." Id. at 81, 679 N.E.2d 706.

{¶ 46} A court will determine whether the parties impliedly consented to having the unpleaded issue litigated based on the following factors: "whether they recognized that an unpleaded issue entered the case, whether the opposing party had a fair opportunity to address the tendered issue or would offer

additional evidence if the case were to be retried on a different theory, and whether the witnesses were subject to extensive cross-examination on the issue." (Citations omitted.) *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 45–46, 5 OBR 99, 448 N.E.2d 1159. To further safeguard the integrity of the adversarial process, implied amendment of pleadings is not acceptable if allowing it would prejudice a party. Id. "Whether an unpleaded issue is tried by implied consent is to be determined by the trial court, whose finding will not be disturbed, absent an abuse of discretion." Id. at 46, 5 OBR 99, 448 N.E.2d 1159.

{¶ 47} In their complaint, the Cadwalladers requested relief based on five distinct bases: easement by necessity, prescription, implication, estoppel, and public policy. The Cadwalladers did not amend the complaint to include relief based on a conditional easement. Further, after the trial, counsel elected to submit posthearing briefs in lieu of closing arguments. In their posttrial memorandum, the Cadwalladers argued that Scovanner's property was encumbered by an easement of necessity, prescription, and implication and that Scovanner should have been estopped from denying the existence of an easement. The Cadwalladers did not argue public policy, as they had in their complaint, and they never brought up a conditional easement. When the trial court decided the case, it considered and ruled on the issues raised at trial and argued in the posttrial briefs, so that it never addressed a conditional easement issue.

{¶ 48} The parties never impliedly consented to trying the conditional easement claim now raised on appeal. In order for the parties to have impliedly consented to try the conditional easement issue absent an amended pleading, the evidence adduced at trial needed to specifically address existence of a conditional easement. Here, the record demonstrates that no such testimony was directly elicited or evidence produced to speak specifically to the existence of a conditional easement.

{¶ 49} In order to prove the existence of a conditional easement, the Cadwalladers would have needed to show that Arnold created a conditional easement when he conveyed Lot 3 to them in 1959. "A conditional easement may be designed to terminate upon the happening of a specified event or contingency. See 25 Am.Jur.2d Easements & Licenses § 111 (1996). 'Generally, easements determinable upon condition are of two types: (1) those that end upon the happening of a condition and (2) those that can be ended if the grantee fails to comply with conditions subsequent.' " *Devoe v. Lavelle,* Richland App. No. 03 CA 94, 2004–Ohio–3300, 2004 WL 1404904, ¶ 8, quoting *Rector v. Halliburton* (Feb. 26, 2003), Tenn. App. No. M1999–02802–COA–R3–CV, 2003 WL 535924.

{¶ 50} However, no such evidence was presented that raised or substantiated this claim. While the Cadwalladers argue that evidence was presented that demonstrated Arnold's intent to dedicate the road as a public thoroughfare and that the easement would exist until the dedication, the offered evidence spoke directly to the claims explicitly pleaded. Evidence of Arnold's perseverance intent and grant of the easement when he sold the land in 1959 arose from the Cadwalladers' need to prove elements of prescriptive and implied easements. The evidence was used for different purposes, as each piece became important in analyzing the pleaded issues so that discussing Arnold's intent or what he told the Cadwalladers could not have put Scovanner on notice that the Cadwalladers were attempting to recover under a conditional-easement theory. As was pleaded, argued at trial, and briefed in posttrial memoranda, the evidence spoke directly to whether the Cadwalladers' use would warrant an easement by prescription, necessity, or implication.

{¶ 51} Because Scovanner was unable to recognize that an unpleaded issue entered the case and did not have a fair opportunity to address the tendered issue or offer additional evidence regarding a conditional-easement theory, the parties did not impliedly consent to trying the conditional-easement issue. Because the conditional easement was not originally pleaded, no amended complaint was ever filed, the parties did not impliedly consent to try the issue at trial, and the theory was raised for the first time on appeal, the Cadwalladers' first assignment of error is overruled.

## V. Easement by Prescription

{¶ 52} Assignment of error No. 2:

{¶ 53} "The trial court erred as a matter of law in failing to hold that the Cadwalladers had acquired an easement by prescription."

{¶ 54} In their second assignment of error, the Cadwalladers argue that the trial court erred by not finding that they had acquired a prescriptive easement over the portion of Scovanner Lane that connected their driveway with State Route 133. We find no merit in this argument.

{¶ 55} Prescriptive easements are not favored in law, because the legal titleholder forfeits rights to another without compensation. *Sepela v. MBL Partners, Ltd.* (Dec. 26, 2000), Clermont App. No. CA2000–06–038, 2000 WL 1875812. In order to prove that a prescriptive easement exists, the moving party must show that it has used the property (1) openly, (2) notoriously, (3) adversely to the servient property owner's property rights, (4) continuously, and (5) for a period of at least 21 years. *125 Properties v. Regency Ctrs., L.P.*, Clermont App. No. CA2005–08–076, 2006–Ohio–1438, 2006 WL 763135. "Each element must be proved by clear and convincing evidence." Id. at ¶ 13.

{¶ 56} Though they are two separate elements, the open and notorious elements are related and are interpreted jointly. *Sepela.* Use of another's land is open when the party does not attempt to conceal his use. *Katz v. Metro. Sewer Dist.* (1997), 117 Ohio App.3d 584, 690 N.E.2d 1357. To be notorious, "the use of the property must be so patent that the true owner of the property could not be deceived as to the property's use." Id. at 589, 690 N.E.2d 1357.

{¶ 57} Use is adverse when it is without permission and inconsistent with the rights of the property owner. *Kimball v. Anderson* (1932), 125 Ohio St. 241, 181 N.E. 17. The use must be in conflict with the apparent use of the true owner or be of such a nature as will signal to the owner that a right is claimed over his property. *125 Properties.* "[A] use is not adverse if the use of another's land is accompanied with an express or implied recognition of the landowner's right to put an end to the use * * *." *Manos v. Day Cleaners & Dyers, Inc.* (1952), 91 Ohio App. 361, 363, 48 O.O. 455, 108 N.E.2d 347.

{¶ 58} "A claimant's use of the disputed property must also be continuous and must last for twenty-one years. Use is 'continuous' if it is neither interrupted by acts of the owner, nor abandoned by the adverse user." *Sepela,* 2000 WL 1875812 at *3.

{¶ 59} The trial court held that while the Cadwalladers have openly and notoriously used Scovanner Lane since they moved into their home in 1959 and have used it continuously for well over 21 years, the use was not adverse to Scovanner's ownership rights. We find no error in this conclusion.

{¶ 60} Adverseness can be shown only when a party uses the land without the permission of the owner. At trial, Scovanner testified that as soon as six to eight weeks after he purchased the property, he had given the Cadwalladers permission to use Scovanner Lane as long as he owned the property. Scovanner's statement therefore showed that the use was not adverse, because his statement was a recognition that he allowed their use but could put an end to it should he ever to choose to sell his land.

{¶ 61} Scovanner also testified regarding the Cadwalladers' expenditure to reseal the driveway as evidenced by the canceled checks presented at trial. Scovanner explained that when Cadwallader asked him if it was permissible to coat the driveway, his response was "sure, go ahead." Additionally, Scovanner testified that he installed the gate so that people would not come all the way back onto his property. However, he left the gate unlocked so that the Cadwalladers could open it as was necessary to leave their house and that he did not stop them from ever using Scovanner Lane. Leaving the gate unlocked implies permissive use of Scovanner Lane that could terminate should Scovanner decide to lock the gate. Though Scovanner's permission remained consistent, each time the Cad-

walladers asked Scovanner for an expressed easement, he refused. While the Cadwalladers vehemently contend that they never asked for Scovanner's permission, the trial court, as the trier of fact, resolved the conflict, finding that the Cadwalladers had asked for, and were granted, permission to use Scovanner lane.

{¶ 62} Because the Cadwalladers' use of Scovanner Lane was permissive, they have failed to prove by clear and convincing evidence that they have established all five elements of a prescriptive easement. Their second assignment of error is therefore overruled.

## VI. Conclusion

{¶ 63} The Cadwalladers' first and second assignments of error are overruled. The Cadwalladers' third assignment of error, as it relates to an implied easement by prior use, is sustained, and the case is remanded to the trial court for determination of the third and fourth elements of this claim. The judgment is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings according to law and consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

BRESSLER and YOUNG, JJ., concur.

