[Cite as *Safran Family Trust v. Hughes Property Mgt.*, 2018-Ohio-438.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

| | |
|---|---|
| Safran Family Trust | Court of Appeals No. OT-17-020 |
| Appellee | Trial Court No. 15CV296 |
| v. | |
| Hughes Property Management | **DECISION AND JUDGMENT** |
| Appellant | Decided: February 2, 2018 |

* * * * *

Richard R. Gillum, for appellee.

Howard C. Whitcomb, III, for appellant.

* * * * *

**JENSEN, J.**

{¶ 1} Appellant, Hughes Property Management, appeals the judgment of the Ottawa County Court of Common Pleas, following a bench trial, which granted easements over appellant's land in favor of appellee, Safran Family Trust. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} For ease of discussion, we note at the outset that Ken Hughes owns Hughes Property Management, and we will refer to them individually or in the collective as appellant. Likewise, we note that John and Janet Safran are the trustees and beneficiaries of the Safran Family Trust, and we will refer to them as appellees.

{¶ 3} On September 28, 2015, appellees initiated the present matter by filing a seven-count complaint in which they sought implied easements by necessity, estoppel, and implication for both ingress and egress and for access to water and sewer.

{¶ 4} The matter proceeded to a bench trial at which the following facts were adduced. The property in question was part of the Avalon on the Bay Subdivision, and was initially owned by the Gough Trust. Appellees have maintained a trailer on Lot 1 on the southeastern corner of the Gough Trust property since 1986. Lot 1 is landlocked, with Lot 2 bordering it on the west, and Lot 3 bordering both Lots 1 and 2 on the north. To the east is additional property not owned by the Gough Trust, and not relevant to this appeal. To the south is the Sandusky Bay.

{¶ 5} In 2006, appellees purchased Lot 1 from the Gough Trust. After purchasing the land from the Goughs, and in reliance on promises made regarding the conveyance of easements, appellees purchased and constructed a new double-wide mobile home on the lot, costing over $140,000. In particular, the Goughs agreed to convey an easement across Lot 2 for ingress and egress. The recorded easement, however, designated a 15-foot strip of land along the southern border of Lot 2, which is submerged in the Sandusky

2.

Bay. Nevertheless, appellees continued to use a gravel U-shaped drive across Lot 2 from Bayview Drive as they had always done. In addition, appellees and the Goughs agreed that appellees would arrange for separate billing for water and sewer with the Ottawa County Sanitary Engineer's office. At the time, appellees received water from a community pump station through a pipe that was partially below ground and partially above ground. Later, that source was shut off, and appellees received water from another neighbor. When the county demanded that appellees discontinue receiving water from a neighbor, appellees installed a water tank. As for sewer service, the sewer line for appellees' mobile home runs east to west, and is partially on the southern portion of Lot 3 and the northern portion of Lot 2.

{¶ 6} Towards the end of 2012, the Gough Trust sought to sell the rest of its property in Avalon on the Bay, including Lots 2 and 3. On October 19, 2012, the Gough Trust entered into an agreement with Howard Hanna Real Estate Services to be its agent for the sale. On the "Exclusive Right to Sell Agreement," the Goughs disclosed that the property was encumbered by an easement for the owner of Lot 1 to get to his property, and by an easement for the owner of Lot 1 to tie into the county's water lines. Notably, a written easement for water and sewer lines was executed on October 24, 2012, granting appellees access across Lot 2. However, that easement was never recorded.

{¶ 7} In January 2013, appellant entered into negotiations with the Gough Trust to purchase the property. On January 3, 2013, appellant received and initialed the "Vacant Land Seller's Description of the Property," which indicated that there were "encroachments,

3.

easements, shared driveways, party walls, or similar conditions that may affect title to the property," and which referred appellant to the "Disclosures on Seller's Agreement." Tomi Johnson, the Gough Trust's real estate agent, testified that she believes the seller's disclosures regarding the easements were transmitted to appellant, and the purchase agreement offered by appellant also indicated that appellant had received the "Residential Property Disclosure Form." Furthermore, the purchase agreement signed by appellant on January 3, 2013, included an Addendum A, stating that appellant's offer was contingent upon "Accepted written agreement with Mr. and Mrs. John Safran regarding the easements for water and sewer lines and driveway location." Appellant's real estate agent, Mary Kay Michel, who is also appellant's sister, testified that the contingency written in Addendum A was in her handwriting. Subsequently, the contingency was crossed out, and appellant initialed the crossed-out contingency on January 15, 2013. The parties dispute who crossed out the contingencies and when he or she did it.

{¶ 8} Appellant testified that a title search was conducted before closing, and revealed only that the property was encumbered by the easement for ingress and egress, which appellant determined was located underwater. Appellant further testified that he had no knowledge of the easement regarding sewer and water access, and that he did not receive the seller's disclosure of that easement. In addition, he testified that when he received the draft of the purchase agreement to sign on January 3, 2013, the contingencies in Addendum A were already crossed off. Ultimately, the sale was completed.

4.

{¶ 9} Following the sale, appellant and appellees had at least one conversation about where appellees could locate their water line. John Safran testified that appellant told him they would figure it out when appellant began constructing his home. Appellant testified that he was unsure what to do because he did not think that an easement existed. Relevant to the location of the water and sewer lines, Steve Lange of the Ottawa County Sanitary Engineer's Office testified that the county's sewer lines terminate near Bayview Drive at a manhole approximately on the boundary between Lots 2 and 3, and the county's water line terminates at a fire hydrant approximately 20 feet to the north of the manhole, located on Lot 3. He testified that the county could not extend the sewer lines to the south because of the potential for infiltration from Lake Erie. However, he stated that a 15-foot easement running east to west across the northern boundary of Lot 3 would be adequate for providing water and sewer access to appellee's mobile home on Lot 1.

{¶ 10} After the trial, the court entered its judgment granting the easements. The court found that appellant had knowledge of the easement issues at the time of the purchase. Thus, the trial court granted appellees an easement by necessity and/or estoppel for access at the present location of the graveled U-shaped drive. In addition, the trial court granted appellees a sewer easement by implication and estoppel where the sewer line is currently located. Finally, the trial court granted an easement by implication and estoppel for a water line.

5.

## II. Assignments of Error

{¶ 11} Appellant has timely appealed the trial court's judgment, and now asserts three assignments of error for our review:

> I. The trial court abused its discretion by ordering an easement across Lot 2 of defendant-appellant's property, thereby unjustly enriching the plaintiff-appellee to defendant-appellant's financial detriment.
>
> II. In finding that plaintiff-appellee had satisfied the elements of easement by necessity and/or by estoppel, the trial court essentially rewarded plaintiff-appellee for its failure to properly record the easement and providing notice to future innocent purchasers, including the defendant-appellant.
>
> III. In granting an easement to plaintiff-appellees, the trial court violated the defendant-appellant's right, as guaranteed by Article 1, Section 19 of the Ohio Constitution, to the inviolate enjoyment of its property.

## III. Analysis

{¶ 12} Appellant's first and second assignments of error are interrelated, thus we will address them together. Appellant contends that the trial court abused its discretion when it granted easements for access and for water and sewer. However, we review a trial court's decision following a bench trial for being against the manifest weight of the evidence. *See Terry v. Kellstone, Inc.*, 6th Dist. Erie No. E-12-061, 2013-Ohio-4419,

¶ 12; *Kennedy v. Collins*, 5th Dist. Perry No. 12-CA-0017, 2013-Ohio-2304, ¶ 6-18 (applying manifest weight to the trial court's finding that no implied easement existed).

{¶ 13} The standard of review for manifest weight is the same in a civil case as it is in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. Under a manifest weight standard of review, we are "guided by a presumption" that the fact-finder's findings are correct. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). When reviewing for manifest weight,

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [decision] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 14} "[A]n easement may be created by specific grant, prescription, or implication which may arise from the particular set of facts and circumstances." *Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles*, 15 Ohio St.3d 79, 80, 472 N.E.2d 711 (1984). Here, the trial court granted an access easement by necessity

7.

and/or estoppel, and granted an easement for water and sewer by implication and/or estoppel.

{¶ 15} "An implied easement is based upon the theory that whenever one conveys property, he or she includes in the conveyance whatever is necessary for its beneficial use and enjoyment and retains whatever is necessary for the use and enjoyment of the land retained." *Arkes v. Gregg*, 10th Dist. Franklin No. 05AP-202, 2005-Ohio-6369, ¶ 11. Implied easements are not favored in the law, "being in derogation of the rule that written instruments shall speak for themselves." *Ciski v. Wentworth*, 122 Ohio St. 487, 172 N.E. 276 (1930), paragraph one of the syllabus. Nonetheless, an easement by implication may arise where the following elements appear:

(1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only. *Id.*

{¶ 16} "An implied easement may be implied either by prior use or by necessity." *Yowonske v. MDB Constr. Co.*, 7th Dist. Belmont No. 09 BE 10, 2010-Ohio-4185, ¶ 20, citing *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, ¶ 14 (12th Dist.). However, if the plaintiff is attempting to establish an implied

8.

easement by necessity, the plaintiff must show that the easement is strictly necessary under the third prong, rather than reasonably necessary. *Tiller v. Hinton*, 19 Ohio St.3d 66, 69, 482 N.E.2d 946 (1985).

{¶ 17} In contrast to implied easements, an easement by estoppel arises when "an owner of property misleads or causes another in any way to change the other's position to his or her prejudice." *Kienzle v. Myers*, 167 Ohio App.3d 78, 2006-Ohio-2765, 853 N.E.2d 1203, ¶ 20 (6th Dist.), citing *Monroe Bowling Lanes v. Woodsfield Livestock Sales*, 17 Ohio App.2d 146, 149, 244 N.E.2d 762 (7th Dist.1969). "Where an owner of land, without objection, permits another to expend money in reliance upon a supposed easement, when in justice and equity the former ought to have disclaimed his conflicting rights, he is estopped to deny the easement." *Id.*

{¶ 18} In its first assignment of error, appellant challenges several findings of the trial court. First appellant contests the trial court's finding that neither party knew that the recorded access easement designated land that was submerged. Appellant contends that appellees were aware of the recorded easement's deficiency, yet took no action to correct the issue. However, appellant does not argue how appellees' knowledge of the submerged easement undermines the conclusion that access across the graveled U-turn on Lot 2 is necessary to enter Lot 1. Thus, we find that this argument is not meritorious in demonstrating that the trial court's grant of an implied easement by necessity for ingress and egress is against the manifest weight of the evidence.

9.

{¶ 19} Next, appellant argues that the trial court found that appellees had expended $250,000 in reliance on the Goughs' promises regarding the easements, when the testimony indicated that appellees spent only $140,000. We find this discrepancy to be meaningless, because even an expenditure of $140,000 would be sufficient to demonstrate that appellees acted in reliance on the promises from the Goughs. Thus, this argument is meritless.

{¶ 20} Finally, appellant challenges the trial court's finding that it had prior knowledge of the easements when it purchased Lots 2 through 9 in 2013. This argument relates to appellant's position, taken throughout its first and second assignments of error, that to the extent appellees have a claim for implied easements or easements by estoppel, those easements have arisen based on the actions of the Gough Trust, not appellant. On this reasoning, appellant concludes that because appellees failed to protect their interest by acquiring and recording the easements, it is appellees who should suffer the consequences from their lack of diligence, not appellant. Indeed, the Ohio Supreme Court has recognized that the equitable right of an implied easement "is not enforceable against a bona fide purchaser for value who has no actual or constructive notice of such easement." *Renner v. Johnson*, 2 Ohio St.2d 195, 207 N.E.2d 751 (1965), paragraph three of the syllabus; *see also* R.C. 5301.25(A) ("Until so recorded or filed for record, [written easements] are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.").

10.

{¶ 21} Here, however, the evidence demonstrates that appellant had prior knowledge of the easements. The "Vacant Land Seller's Description of the Property" disclosed that there were easements or other encumbrances on the property that appellant was buying, and referred appellant to the Seller's Disclosures, which referenced the access and water easements. The seller's real estate agent testified that she believes the disclosures were transmitted, and the purchase agreement offer signed by appellant indicated that it had received the disclosures. Moreover, appellant's own offer was made contingent upon "Accepted written agreement with Mr. and Mrs. John Safran regarding the easements for water and sewer lines and driveway location." This contingency was handwritten by appellant's real estate agent. Regardless of when the contingency was crossed out, we hold that its presence, combined with the other evidence relating to the disclosure of the easements, supports the trial court's finding that appellant had prior knowledge of the easements at the time it purchased the property. Therefore, appellant is not a bona fide purchaser, and the implied easements are enforceable.

{¶ 22} Accordingly, appellant's first and second assignments of error are not well-taken.

{¶ 23} Finally, in his third assignment of error, appellant argues that the trial court's grant of an easement to appellees violated its constitutional right to the inviolate enjoyment of its property. Appellant concludes that the trial court's judgment renders Lot 2 useless for the purpose of constructing a lakeside home, and therefore the judgment constitutes an uncompensated taking.

11.

{¶ 24} Article I, Section 19 of the Ohio Constitution provides,

Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.

{¶ 25} Here, however, the property was not "taken for public use." Rather, the trial court settled a land dispute between two private entities. Therefore, Article I, Section 19 does not apply.

{¶ 26} Accordingly, appellant's third assignment of error is not well-taken.

### IV. Conclusion

{¶ 27} For the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                    _____
                                                        JUDGE

James D. Jensen, J.

                                     _____
Christine E. Mayle, P.J.                              JUDGE
CONCUR.

                                     _____
                                                        JUDGE